**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

--------------------------------------------------------x

| | | |
|---|---|---|
| MATTHEW FERMIN, | : | |
| LICHUN HUO, | : | |
| JOSEFINA VALDEZ, and | : | |
| ADRIANA SOUSA, on behalf of themselves | : | FIRST AMENDED CLASS |
| and others similarly situated, | : | ACTION COMPLAINT |
| Plaintiffs, | : | |
| | : | |
| - against - | : | Case No. |
| | : | |
| PFIZER INC. | : | JURY TRIAL DEMANDED |
| Defendant, | | |

--------------------------------------------------------x

Plaintiffs MATTHEW FERMIN, LICHUN HUO, JOSEFINA VALDEZ, and ADRIANA SOUSA, individually and on behalf of all other persons similarly situated, by their undersigned attorneys, as and for their First Amended Complaint against the Defendant, allege the following based upon personal knowledge as to themselves and their own action, and, as to all other matters, respectfully allege, upon information and belief, as follows (Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery):

## NATURE OF THE ACTION

1. This action seeks redress for deceptive and otherwise improper business practices that Defendant, PFIZER, INC. (hereinafter, "PFIZER" or "Defendant"), engages in with respect to the packaging of its Advil® ibuprofen products, which are produced in the form of coated

tablets, film-coated tablets, coated caplets (capsule-shaped tablets), and Liqui-Gels® (liquid-filled capsules) containing 200mg ibuprofen, a nonsteroidal anti-inflammatory drug.   The ibuprofen products are packaged in bottles of various sizes and pill quantities. *See* **EXHIBIT A** for the full list of products at issue.

2.      Defendant, with intent to induce consumers to purchase the ibuprofen products, manufactures, markets and sells the products (i) in containers made, formed or filled as to be misleading and (ii) with excessive empty space (hereinafter, "non-functional slack-fill"), in violation of the Federal Food Drug & Cosmetic Act ("FDCA") Section 502 (21 U.S.C. 352(i)), as well as state laws prohibiting misbranded drugs with requirements mirroring federal law.

3.      Defendant sold Plaintiffs and Class members, and continues to sell consumers the following products in containers made, formed or filled as to be misleading (in violation of New York, California and Florida laws) and with non-functional slack-fill (in violation of California law):

      a.   Advil® 10 Tablet Product
      b.   Advil® 24 Tablet Product
      c.   Advil® 50 Tablet Product
      d.   Advil® 100 Tablet Product
      e.   Advil® 100+15 Free Tablet Product
      f.   Advil® 150 Tablet Product
      g.   Advil® 200 Tablet Product
      h.   Advil® 300 Tablet Product
      i.   Advil® Film-Coated 20 Tablet Product
      j.   Advil® Film-Coated 40 Tablet Product
      k.   Advil® Film-Coated 80 Tablet Product
      l.   Advil® Film-Coated 20 Caplet Product
      m.   Advil® 50 Caplet Product
      n.   Advil® 100 Caplet Product
      o.   Advil® 200 Caplet Product
      p.   Advil® 100 Gel Caplet Product
      q.   Advil® 20 Liqui-Gels® Product
      r.   Advil® 40 Liqui-Gels® Product
      s.   Advil® 80 Liqui-Gels® Product
      t.   Advil® 80 + 20 Liqui-Gels® Product

u.  Advil® 160 + 20 Free Liqui-Gels® Product
v.  Advil® PM 40 Liqui-Gels® Product
w.  Advil® Migraine 20 Capsule Product
x.  Advil® Migraine 40 Capsule Product
y.  Advil® Migraine 80 Capsule Product
z.  Any other Advil® Products that are packaged misleadingly and contain non-functional slack-fill (collectively, the "Products").

Such Products are detailed under **EXHIBIT A**.

4.     Defendant sold and continues to sell the Products under the Advil® brand. Each of the Products (i) contains the same or similar misleading product packaging, as described herein, (ii) contains non-functional slack-fill and (iii) violates 21 U.S.C. 352(i), as well as consumer fraud laws of New York, California and Florida, as described herein.

5.     The Products are packaged in plastic dispensing bottles and are used to relieve several kinds of pain, including headache, muscle aches, minor arthritis and other joint pain, and backache. The size of the bottles in comparison to the volume of the Products contained therein make it appear as if the consumer is buying more than what is actually being sold. By increasing the size of the Product packaging, Defendant maximizes the shelf presence of its Products over competitor products.

6.     Plaintiffs and Class members viewed Defendant's misleading Product packaging, reasonably relied in substantial part on the representations and were thereby deceived in deciding to purchase the Products for a premium price.

7.     Plaintiffs bring this proposed consumer class action on behalf of themselves and all other persons nationwide, who from the applicable limitations period up to and including the present (the "Class Period"), purchased for consumption and not resale of the Products.

8.     During the Class Period, Defendant manufactured, marketed and sold the Products throughout the United States. Defendant purposefully sold the Products in containers made, formed or filled as to be misleading and with non-functional slack-fill.

9.     Defendant violated statutes enacted in New York, California and Florida that are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising.  These statutes are:

*a.*   New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.;*
*b.*   California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.;*
*c.*   California Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.;*
*d.*   California Business & Professions Code §§ 17500, *et seq.;*
*e.*   Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*

10.     Defendant has deceived Plaintiffs and other consumers nationwide by mischaracterizing the volume of its Products. Defendant has been unjustly enriched as a result of selling the Products in disproportionately large containers compared to the volume of the actual product contained therein.   Through these unfair and deceptive practices, Defendant has collected millions of dollars from the sale of its Products that it would not have otherwise earned. Plaintiffs bring this action to stop Defendant's misleading practice.

## JURISDICTION AND VENUE

11.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B) whereby: (i) the proposed class consists of over 100 class members, (ii) a member of the putative class is a citizen of a different state than Defendant, and (iii) the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs.

12.     The Court has jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C § 1331 because it arises under the laws of the United States.

4

13.     The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the United States Constitution.

14.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

15.     This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction. This Court has personal jurisdiction over Defendant, because it conducts substantial business in this District, some of the actions giving rise to the Complaint took place in this District, and some of Plaintiffs' claims arise out of Defendant's operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state; committing a tortious act in this state; and causing injury to a person or property in this state arising out of Defendant's acts and omissions outside this state.

16.     Additionally, this court has personal jurisdiction over Defendant because Defendant's headquarters are in New York State and their Products are advertised, marketed, distributed, and sold throughout New York State; Defendant engaged in the wrongdoing alleged in this Complaint throughout the United States, including in New York State; and Defendant has sufficient minimum contacts with New York and/or otherwise has intentionally availed itself of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engaged in substantial and not isolated activity within New York State.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, the Defendant has caused harm to Class members residing in this District, and the Defendant is a

resident of this District under 28 U.S.C. 1391(c)(2) because it is subject to personal jurisdiction in this district.

## PARTIES

*Plaintiffs*

18.     Plaintiff MATTHEW FERMIN is, and at all relevant times hereto has been, a citizen of the State of New York and resides in Bronx County. Plaintiff FERMIN has purchased the Products for personal consumption within the State of New York. Plaintiff FERMIN purchased the Products from convenience stores, supermarkets, and pharmacies located throughout Queens County, including but not limited to Duane Reade. Specifically, in the twelve month period prior to the filing of the initial Complaint, Plaintiff FERMIN purchased (i) the 100 Tablet Product for $10.99 (or more), (ii) the 80 + 20 Free Liqui-Gels® Product for $12.79 (or more) and (iii) the 100 Caplet Product for $10.99 (or more) in Queens County. Plaintiff FERMIN viewed the size of the products and purchased them at a premium price in reliance on Defendant's packaging misrepresentations. Specifically, Defendant's oversized containers misled Plaintiff FERMIN to believe that he was receiving more of the Products than he actually was and he was financially injured as a result. The Products purchased by Plaintiff FERMIN are substantially similar to all the other Products, are similarly packaged in misleading containers; and he has standing to represent purchasers of all Products.

19.     Plaintiff LICHUN HUO is, and at all relevant times hereto has been, a citizen of the State of California and resides in Pasadena, California. Plaintiff HUO has purchased the Products for personal consumption within the State of California. Plaintiff HUO purchased the Products from convenience stores, supermarkets, and pharmacies located in California. Specifically, in the twelve month period prior to the filing of the initial Complaint, Plaintiff HUO purchased the Advil® 100+15 Free Tablet Product for $10.99 (or more) in Pasadena, California..

Plaintiff HUO viewed the size of the product and purchased it at a premium price in reliance on Defendant's packaging misrepresentations. Specifically, Defendant's oversized containers misled Plaintiff HUO to believe that she was receiving more of the Products than she actually was and she was financially injured as a result. The product purchased by Plaintiff HUO is substantially similar to all the other Products, is similarly packaged in misleading containers and contains non-functional slack-fill in violation of California law; and she has standing to represent purchasers of all Products.

20.     Plaintiff JOSEFINA VALDEZ is, and at all relevant times hereto has been, a citizen of the State of California and resides in San Bernardino, California. Plaintiff VALDEZ has purchased the Products from convenience stores, supermarkets, and pharmacies located in California. Specifically, in the twelve month period prior to the filing of the initial Complaint, Plaintiff VALDEZ purchased the Advil® 50 Caplet Product in San Bernardino, California. Plaintiff VALDEZ viewed the size of the product and purchased it at a premium price in reliance on Defendant's packaging misrepresentations. Specifically, Defendant's oversized containers misled Plaintiff VALDEZ to believe that she was receiving more of the Products than she actually was and she was financially injured as a result. The product purchased by Plaintiff VALDEZ is substantially similar to all the other Products, is similarly packaged in misleading containers and contains non-functional slack-fill in violation of California law; and she has standing to represent purchasers of all Products.

21.     Plaintiff ADRIANA SOUSA is, and at all relevant times hereto has been, a citizen of the State of Florida and resides in Tallahassee, Florida. Plaintiff SOUSA has purchased the Products for personal consumption within the State of Florida. Plaintiff SOUSA purchased the Products from convenience stores, supermarkets, and pharmacies located in Florida, including

but not limited to Publix. Specifically, within the past twelve month prior to filing the initial Complaint, Plaintiff SOUSA purchased the Advil® 20 Liqui-Gels® Product in Tallahassee, Florida for $4.99 (or more). Plaintiff SOUSA viewed the size of the product and purchased it at a premium price in reliance on Defendant's packaging misrepresentations. Specifically, Defendant's oversized containers misled Plaintiff SOUSA to believe that she was receiving more of the Product than she actually was and was financially injured as a result. The product purchased by Plaintiff SOUSA is substantially similar to all the other Products, is similarly packaged in misleading containers; and she has standing to represent purchasers of all Products.

*Defendant*

22.     Defendant PFIZER is a corporation organized under the laws of Delaware with its headquarters at 235 East 42nd Street, New York, NY 10017 and an address for service of process at C/O C T Corporation System, 111 Eighth Avenue, New York, NY 10011. Advil® is one of PFIZER's billion dollar consumer healthcare brands and the number one selling branded over the counter analgesic in the world. PFIZER manufactured, distributed, advertised, marketed and sold the Advil® Products to tens of thousands of customers nationwide.

## FACTUAL ALLEGATIONS

### Identical State and Federal Laws Prohibit Misbranded Drugs

23.     The FDCA, 21 U.S.C. §§ 301 *et seq.*, governs the sale of foods, drugs and cosmetics in the United States. The classification of a product as a food, drug, or cosmetic, affects the regulations by which the product must abide.

24.     The FDCA defines drugs, in part, by their intended use, as "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease," or "articles (other than food) intended to affect the structure or function of the body of man or other animals," 21 U.S.C. § 321(g)(1).

25.     Under 21 U.S.C. § 352(i)(1), a drug or device shall be deemed to be misbranded "[i]f it is a drug and its container is so made, formed, or filled as to be misleading…."

26.     State drug labeling laws also impose requirements which mirror federal law. For example, New York Edn. Law § 6815 identically provides that "[a] drug or device shall be deemed to be misbranded:…h.(1)If it is a drug and its container is so made, formed or filled as to be misleading." Further, Title 24 of the Rules of the City of New York § 71.05 provides that "[a] drug shall be deemed misbranded as set forth in the Federal Food, Drug, and Cosmetic Act (21 U.S.C. §352) or the State Education Law (§6815)…."

27.     Similarly, under California Health & Safety Code, § 111390, "[a]ny drug or device is misbranded if its container is so made, formed, or filled as to be misleading…." Florida's Drug and Cosmetic Act § 499.007 also provides that "[a] drug or device is misbranded…(9) If it is: (a) A drug and its container or finished dosage form is so made, formed, or filled as to be misleading…."

28.     Courts have recognized that state law causes of action for labeling violations are not preempted by federal law if they "seek to impose requirements that are identical to those imposed by the FDCA." Ackerman v. Coca Cola, No. 09-0395, 2010 WL 2925955, at *6 (E.D.N.Y. July 21, 2010). This is so because "a state statute mirroring its federal counterpart does not impose any additional requirement merely by providing a damage remedy for conduct that would otherwise violate federal law, even if the federal statute provides no private right of action." Ackerman, 2010 WL 2925955, at *6 (citing Bates, 544 U.S. at 432).

**Defendant's Products Are Packaged Misleadingly and Contain Non-Functional Slack-Fill**

29.     Defendant develops, manufactures, markets, distribute and sell over the counter products under well-known household brand names such as Advil®. The Products are sold at

most supermarket chains, convenience stores and major retail outlets throughout the United States, including but not limited to Wal-Mart, Costco, CVS, Walgreens, Kroger, Duane Reade, Publix, Target and Amazon.com.

30.     Defendant has intentionally and routinely packaged the Products in containers made, formed or filled as to be misleading and has routinely employed slack-filled packaging containing non-functional slack-fill to mislead customers into believing that they were receiving more Products than they actually were.

31.     Excessive empty space, or non-functional slack-fill is the difference between the actual capacity of a containers and the *volume* of product contained within. Plaintiffs were (and a consumer would reasonably be) misled about the volume of the product contained within the container in comparison to the size of the Products' packaging. The size of the bottles in relation to the actual volume of the tablets contained therein was intended to mislead the consumer into believing the consumer was getting more of the product than what was actually in the container.

32.     Defendant sold and continues to sell the following Products in misleading containers and with non-functional slack-fill during the class period:

    a.  Advil® 10 Tablet Product
    b.  Advil® 24 Tablet Product
    c.  Advil® 50 Tablet Product
    d.  Advil® 100 Tablet Product
    e.  Advil® 100+15 Free Tablet Product
    f.  Advil® 150 Tablet Product
    g.  Advil® 200 Tablet Product
    h.  Advil® 300 Tablet Product
    i.  Advil® Film-Coated 20 Tablet Product
    j.  Advil® Film-Coated 40 Tablet Product
    k.  Advil® Film-Coated 80 Tablet Product
    l.  Advil® Film-Coated 20 Caplet Product
    m.  Advil® 50 Caplet Product
    n.  Advil® 100 Caplet Product
    o.  Advil® 200 Caplet Product
    p.  Advil® 100 Gel Caplet Product

q.  Advil® 20 Liqui-Gels® Product
r.  Advil® 40 Liqui-Gels® Product
s.  Advil® 80 Liqui-Gels® Product
t.  Advil® 80 + 20 Liqui-Gels® Product
u.  Advil® 160 + 20 Free Liqui-Gels® Product
v.  Advil® PM 40 Liqui-Gels® Product
w.  Advil® Migraine 20 Capsule Product
x.  Advil® Migraine 40 Capsule Product
y.  Advil® Migraine 80 Capsule Product
z.  Any other Advil® Products packaged in misleading containers and that contain non-functional slack-fill.

33.     Pictures of the Products and packaging are shown in **EXHIBIT A**, with horizontal lines indicating the approximate height of the pills in the respective bottles.

34.     Visual estimates in **EXHIBIT A** show that the contents of the Products do not fill up the entirety of the dispensing bottles. In fact, each bottle contains significant non-functional slack-fill of up to 77% in violation of federal and state laws.

35.     The size of the bottles of the Products in relation to the volume of the products actually contained therein gives the false impression that the consumer is buying more than they are actually receiving.

36.     Plaintiffs and the members of the Class relied on the sizes of the dispensing bottles to believe that the entire volume of the packaging would be filled to capacity with ibuprofen or acetaminophen pills, respectively. Relying on the size of the bottles of the Products, Plaintiffs and Class members were misled as to the quantity in the bottles. The size of the bottles is likely to mislead ordinary consumers as to the quantity of ibuprofen contained in the bottles, even despite the labels on the bottles disclosing the number of pills and the milligrams of ibuprofen. The number of pills, or the milligrams of ibuprofen, ultimately do not provide sufficient information as to the quantity of product being sold because Plaintiffs, Class members and reasonable consumers will logically believe the larger bottles contain more product, relative

11

to competitor bottles which are significantly smaller. This is supported by studies which demonstrate that (i) consumer purchasing decisions are made in 13 seconds or less[1] and (ii) faced with a choice between a larger box or a smaller box, both with the same amount inside, consumers choose the larger box because they believe they are getting a better value.[2]

37.     Plaintiffs and the members of the Class did not rely on the labeling specifying the number of ibuprofen pills in the Products, but rather relied on the sizes of the packaging and dispensing bottles, which led them to have an expectation that the entire volume of the packaging would be filled to capacity with pills.

38.     Although Defendant's product packaging specifies the number of pills contained within, that in itself is not sufficient to ensure that consumers will not be misled by Defendant's intentional, routine, misleading product packaging that contains non-functional slack-fill. In its analysis of a similar matter, the Third Circuit held that "[t]he question was not whether the ordinary purchaser would expect to find a particular number of individual candies in the box but whether such a purchaser would expect to find more of the Delson box filled." *See United States v. 174 Cases…Delson Thin Mints*, 287 F. 2d 246, 247-48 (3rd Cir. 1961). *See also Waldman v. New Chapter*, No. 09-CV-3514 (JS), (E.D.N.Y. May 19, 2010), where the Court held that "under New York law, it is 'contrary to equity and good conscience' to enable a party to benefit from misleading misrepresentations," stating that despite the weight and number of servings of the product was clearly listed on the outer packaging, the product was nevertheless misleading and

---

[1] http://www.nielsen.com/us/en/insights/news/2015/make-the-most-of-your-brands-20-second-windown.html (citing the Ehrenberg-Bass Institute of Marketing Science's Report 67 "Shopping Takes Only Seconds…In-Store and Online").

[2] According to Brian Wansink, Professor of Marketing at Cornell University, consumers tend to ignore size labels and base their buys largely on package dimensions. Faced with a large box and a smaller box, both with the same amount of product inside, he said, consumers are apt to choose the larger box because they think it's a better value. See http://www.consumerreports.org/cro/magazine-archive/2010/january/shopping/product-packaging/overview/product-packaging-ov.htm.

contained non-functional slack-fill. New York General Business Law § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful." Accordingly, by simply stating the number of pills on the product packaging does not negate Defendant's unlawful, misleading practice of packaging their products with non-functional slack-fill.

39.     There is no functional purpose for the excessive empty space in the Products. Of the Products, only the 100 Tablet Product contains cotton to prevent pill breakage. The 100 Tablet Product contains approximately 2 inches of cotton though far less cotton is necessary to prevent breakage. The remaining Products do not contain cotton or any other filler material to prevent pill breakage.[3]

40.     Plaintiffs and the members of the Class relied on the sizes of the dispensing bottles to believe that the entire volume of the packaging would be filled to capacity with ibuprofen pills.

41.     Plaintiffs and the members of the Class reasonably relied on the expectation that Defendant's Products would not be packaged deceptively or contain non-functional slack-fill, as Defendant also sells similar products filled to capacity, including but not limited to the Advil® 120 Liqui-Gels® product and the Junior Strength Advil® products for children. *See* **EXHIBIT B** for similar products sold by Defendant that are not packaged deceptively and do not contain non-functional slack-fill. As such, there can be no functional reason why the Products could not similarly be filled so as to not contain excessive empty space.

---

[3] While a certain amount of headspace may be necessary to prevent breakage in some Products, the amount of headspace present in the Products serves no functional purpose.

**Plaintiffs Were Injured as a Result of Defendant's Misleading and Deceptive Conduct**

42.     Defendant's Product packaging as alleged herein is deceptive and misleading and was designed to increase sales of the Products. By increasing the size of the bottles and boxes in which the pills are contained, Defendant maximizes the shelf presence of its Products over competitor products. Defendant's misrepresentations are part of its systematic Product packaging practice.

43.     There is no practical reason for the excessive empty space in the Products other than to mislead consumers as to the actual volume of the Products being purchased.

44.     As a result of Defendant's deception, consumers – including Plaintiffs and members of the proposed Class – have purchased Products packaged in containers made, formed or filled as to be misleading and that contain non-functional slack-fill. Moreover, Plaintiffs and Class members have paid a premium for Defendant's Products over other ibuprofen products sold on the market.

45.     Under the FDCA, the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art. Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading. If any one representation in the labeling is misleading, the entire drug is misbranded. No other statement in the labeling cures a misleading statement. "Misleading" is judged in reference to "the ignorant, the unthinking and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951). Under the FDCA, it is not necessary to prove that anyone was actually misled.

46.     Defendant's misrepresentations regarding its Product packaging violated the FDCA, 21 U.S.C. § 352(i)(1), state drug labeling laws (which impose requirements which mirror federal law), as well as the consumer protection laws of New York, California and Florida.

47.     Defendant violated consumer protection laws of New York, California and Florida because it misled Plaintiffs and Class members about the volume of the Products in comparison to the size of the Products' packaging. The size of the containers in relation to the actual amount of the Products contained therein gives the false impression that the consumer is buying more than they are actually receiving.

48.     The types of misrepresentations made above would be considered by a reasonable consumer when deciding to purchase the Products. A reasonable person would attach importance to whether Defendant's Products are "misbranded," i.e., not legally salable, or capable of legal possession, and/or packaged in misleading containers.

49.     Plaintiffs and Class members did not know, and had no reason to know, that the Products were packaged in misleading containers.

50.     Defendant's Product packaging was a material factor in Plaintiffs' and Class members' decisions to purchase the Products. Based on Defendant's Product packaging size, and not the specific number of pills as described in the labeling, Plaintiffs and Class members believed that they were getting more of the Products than was actually being sold. Had Plaintiffs and Class members known Defendant's Products were packaged misleadingly, they would not have bought the Products.

51.     At the point of sale, Plaintiffs and Class members did not know, and had no reason to know, that the Products were packaged in misleading containers as set forth herein, and would not have bought the Products had they known the truth about them.

52.     Defendant has reaped enormous profits from their false, misleading and deceptive marketing and sale of the Products.

53.     Plaintiffs bring this action on behalf of themselves and other similarly situated consumers who have purchased the Products to stop the dissemination of this false, misleading and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the Products. Plaintiffs allege unjust enrichment and violations of consumer protection laws in New York, California and Florida.

54.     Plaintiffs and Class members paid the full price of the Products and received less of what Defendant represented they would be getting due to the misleading packaging of the Products. In order for Plaintiffs and Class members to be made whole, Plaintiffs and Class members would have to receive enough of the ibuprofen nonsteroidal anti-inflammatory pills so that there is no non-functional slack-fill or have paid less for the Products. In the alternative, Plaintiffs and members of the Class are damaged by the percentage of non-functional slack-fill relative to the purchase price they paid.

55.     Through this action, Plaintiffs seek injunctive relief, actual damages, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs and all other relief available to the Class as a result of Defendant's unlawful conduct.

## CLASS ACTION ALLEGATIONS

*The Nationwide Class*

56.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class (the "Class"):

> All persons or entities in the United States who made retail purchases of Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

16

***The New York Class***

57.     Plaintiff FERMIN seeks to represent a class consisting of the following subclass

(the "New York Class"):

> All persons or entities in New York who made retail
> purchases of Products during the applicable limitations period,
> and/or such subclasses as the Court may deem appropriate.

***The California Class***

58.     Plaintiffs HUO and VALDEZ seek to represent a class consisting of the following

subclass (the "California Class"):

> All persons or entities in California who made retail
> purchases of Products during the applicable limitations period,
> and/or such subclasses as the Court may deem appropriate.

***The Florida Class***

59.     Plaintiff SOUSA seeks to represent a class consisting of the following subclass

(the "Florida Class"):

> All persons or entities in Florida who made retail purchases
> of Products during the applicable limitations period, and/or such
> subclasses as the Court may deem appropriate.

60.     The proposed Classes exclude current and former officers and directors of

Defendant, members of the immediate families of the officers and directors of Defendant,

Defendant's legal representatives, heirs, successors, assigns, and any entity in which it has or has

had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

61.     Plaintiffs reserve the right to revise the Class definition based on facts learned in

the course of litigating this matter.

62.     The members of the Class are so numerous that joinder of all members is

impracticable. While the exact number of Class members is unknown to Plaintiffs at this time

17

and can only be ascertained through the appropriate discovery, Plaintiffs believe that there are thousands of members in the proposed Class. Other members of the Class may be identified from records maintained by Defendant and may be notified of the pendency of this action by mail, or by advertisement, using the form of notice similar to that customarily used in class actions such as this.

63.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendant's wrongful conduct.

64.     Plaintiffs will fairly and adequately protect the interests of the members of the Class in that Plaintiffs have no interests antagonistic to those of the other members of the Class. Plaintiffs have retained experienced and competent counsel.

65.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the Class to individually seek redress for the wrongful conduct alleged herein. If Class treatment of these claims were not available, Defendant would likely unfairly receive millions of dollars or more in improper charges.

66.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

      i.   Whether Defendant packaged, marketed, advertised and/or sold Products to Plaintiffs and Class members, using false, misleading and/or deceptive packaging;

     ii.   Whether Defendant's' actions constitute violations of 21 U.S.C. § 352(i)(1);

iii.   Whether Defendant's' actions constitute violations of the consumer protection laws of New York, California and Florida;

iv.   Whether Defendant omitted and/or misrepresented material facts in connection with the packaging, marketing, advertising and/or sale of Products;

v.   Whether Defendant's packaging, marketing, advertising and/or selling of Products constituted an unfair, unlawful or fraudulent practice;

vi.   Whether any of the Products during the relevant statutory period  were packaged in containers made, formed or filled as to be misleading;

vii.   Whether any of the Products during the relevant statutory period contained unlawful non-functional slack-fill;

viii.   Whether, and to what extent, injunctive relief should be imposed on Defendant to prevent such conduct in the future;

ix.   Whether the members of the Class have sustained damages as a result of Defendant's wrongful conduct;

x.   The appropriate measure of damages and/or other relief;

xi.   Whether Defendant has been unjustly enriched by its scheme of using false, misleading and/or deceptive packaging or misrepresentations, and;

xii.   Whether Defendant should be enjoined from continuing its unlawful practices.

67.   The class is readily definable, and prosecution of this action as a Class action will reduce the possibility of repetitious litigation. Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a Class action.

68.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

69.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

70.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

71.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

72.     Defendant's conduct is generally applicable to the Class as a whole and Plaintiffs seek, inter alia, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

## COUNT I

**INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
(DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

73.     Plaintiff FERMIN repeats and realleges each and every allegation contained above as if fully set forth herein and further alleges the following:

74.     Plaintiff FERMIN brings this claim individually and on behalf of the other members of the New York Class for an injunction for violations of New York's Deceptive Acts or Practices Law, General  Business Law ("NY GBL") § 349.

75.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

76.     Under the New York Gen. Bus. Code § 349, it is not necessary to prove justifiable reliance.  ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 . . . claims, it was error.  <u>Justifiable reliance by the plaintiff is not an element of the statutory claim</u>." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

77.     The practices employed by Defendant, whereby Defendant packaged, advertised, promoted, marketed and sold its Products in containers with excessive empty space is unfair, deceptive and misleading and are in violation of the NY GBL § 349. Moreover, New York State law broadly prohibits the misbranding of drugs in language identical to that found in regulations promulgated pursuant to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 352 *et seq.* Under New York Edn. Law § 6815, "[a] drug or device shall be deemed to be misbranded:…h.(1)If it is a drug and its container is so made, formed or filled as to be misleading."

78.     The foregoing deceptive acts and practices were directed at consumers.

79.     Defendant should be enjoined from packaging its Products with excessive empty space as described above pursuant to NY GBL § 349, New York Edn. Law § 6815, and 21 U.S.C. § 352(i).

80.     A consumer has standing to seek injunctive relief even where they are not likely to repurchase the product. *See Belfiore v. Procter & Gamble Co*., No. 14-cv-4090 (E.D.N.Y. 2014).

81.     Plaintiff FERMIN, on behalf of himself and all others similarly situated, respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL, and such other relief as this Court deems just and proper.

## COUNT II

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
### (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

82.     Plaintiff FERMIN repeats and realleges each and every allegation contained above as if fully set forth herein and further alleges the following:.

83.     Plaintiff FERMIN brings this claim individually and on behalf of the other members of the New York Class for Defendant's violations of NY GBL § 349.

84.     Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in her own name to enjoin such unlawful act or practice, an action to recover her actual damages or fifty dollars, whichever is greater, or both such actions.  The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section.  The court may award reasonable attorney's fees to a prevailing plaintiff.

85.     "There is no requirement that the plaintiff show specific dollar injury, or to obtain injunctive relief that there even be pecuniary injury at all. Nor is there any requirement that the deceptive practice or false advertising be intentional or even reckless or amount to fraud." N.Y. Gen. Bus. L. § 349, Practice Commentaries. "Nor does plaintiff have to prove reliance upon defendant's deceptive practices." *BNI New York Ltd. v. DeSanto*, 675 N.Y.S.2d 753 at 755 (1998). *See also, Small v. Lorillard Tobacco Company*, 677 N.Y.S.2d 518, 519 (1st Dept. 1998) (Section 349 "does not require proof of justifiable reliance").

86.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by misbranding its Products as seeming to contain more in the packaging than is actually included.

87.     The practices employed by Defendant, whereby Defendant packaged, advertised, promoted, marketed and sold its Products in containers with excessive empty space is unfair, deceptive and misleading and are in violation of the NY GBL § 349, New York Edn. Law § 6815 and the FDCA, 21 U.S.C. 352(i) in that said Products are misbranded.

88.     The foregoing deceptive acts and practices were directed at consumers.

89.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the quantities of the Products in that they misled Plaintiff and the other Class members into believing that they were buying more than what they actually received.

90.     Plaintiff FERMIN and the other Class members suffered a loss as a result of Defendant's deceptive and unfair trade acts.  Specifically, as a result of Defendant's deceptive and unfair acts and practices, Plaintiff FERMIN and the other Class members suffered monetary losses associated with the purchase of Products, i.e., receiving less than the capacity of the

packaging due to excessive empty space in the Products. In order for Plaintiff FERMIN and Class members to be made whole, they need to receive either the price premium paid for the Products or a refund of the purchase price of the Products equal to the percentage of excessive empty space in the Products.

## COUNT III

### VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE § 1750, *ET SEQ.*

91.     Plaintiffs HUO and VALDEZ reallege and incorporate herein by reference the allegations contained in all preceding paragraphs and further allege as follows:

92.     Plaintiffs HUO and VALDEZ bring this claim individually and on behalf of the other members of the California Class for Defendant's violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

93.     Plaintiffs HUO and VALDEZ and California Class members are consumers who purchased the Products for personal, family or household purposes. Plaintiffs HUO, VALDEZ and the California Class members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d). Plaintiffs HUO and VALDEZ and the California Class members are not sophisticated experts with independent knowledge of corporate branding, labeling, and packaging practices.

94.     Products that Plaintiffs HUO and VALDEZ and other California Class members purchased from Defendant were "goods" within the meaning of Cal. Civ. Code § 1761(a).

95.     Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that were intended to result, or which have resulted in, the sale of goods to consumers.

24

96.     Defendant's packaging with non-functional slack-fill violates federal and California law because the Products are intentionally packaged to prevent the consumer from being able to fully see their contents.

97.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(5) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it misrepresents that the Products have quantities which they do not have.

98.     Cal. Civ. Code § 1770(a)(9) further prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9), because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it advertises goods with the intent not to sell the goods as advertised.

99.     Plaintiffs HUO and VALDEZ and the California Class members are not sophisticated experts about the corporate branding, labeling, and packaging practices related to the Products. Plaintiffs HUO and VALDEZ and the California Class acted reasonably when they purchased the Products based on their belief that Defendant's representations were true and lawful.

100.     Plaintiffs HUO and VALDEZ and the California Class suffered injuries caused by Defendant because (a) they would not have purchased the Products on the same terms absent

Defendant's illegal and misleading conduct as set forth herein, or if the true facts were known concerning Defendant's representations; (b) they paid a price premium for the Products due to Defendant's misrepresentations and deceptive packaging; and (c) the Products did not have the quantities as promised.

101.    On or about January 20, 2015, prior to filing this action, a CLRA notice letter was served on Defendant which complies in all respects with California Civil Code § 1782(a). Plaintiff LICHUN HUO sent PFIZER, INC. on behalf of herself and the proposed Class, a letter via certified mail, return receipt requested, advising Defendant that it is in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. A true and correct copy of Plaintiff LICHUN HUO's letter is attached hereto as **EXHIBIT C**.

102.    Wherefore, Plaintiffs HUO and VALDEZ and the California Class seek damages, restitution, and injunctive relief for these violations of the CLRA.

**COUNT IV**

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200, *ET SEQ*.**

103.    Plaintiffs HUO and VALDEZ reallege and incorporate herein by reference the allegations contained in all preceding paragraphs and further allege as follows:

104.    Plaintiffs HUO and VALDEZ bring this claim individually and on behalf of the members of the proposed California Class for Defendant's violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.

105.    The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

106.    Defendant's packaging practices violate federal and California law because its packaging contains misleading and deceptive non-functional slack-fill.

107.    Defendant's business practices, described herein, violated the "unlawful" prong of the UCL by violating the California Business and Professional Code, § 12606 (b), which specifically prohibits non-functional slack-fill in any commodities. Defendant's packaging and labeling practices as described herein are unlawful also because it violated Section 403(r) of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. 343(d), California Health & Safety Code § 110690, the CLRA, and other applicable law as described herein.

108.    Defendant's business practices, described herein, violated the "unfair" prong of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's packaging and advertising is of no benefit to consumers.

109.    Defendant violated the "fraudulent" prong of the UCL by misleading Plaintiffs HUO and VALDEZ and the California Class to believe that the Products do not contain unnecessary, excessive non-functional slack-fill and are not intended to deceive or mislead the consumers.

110.    Plaintiffs HUO and VALDEZ and the California Class members are not sophisticated experts about corporate branding, labeling, and packaging practices. Plaintiffs HUO and VALDEZ and the California Class acted reasonably when they purchased the Products based on their belief that Defendant's representations were true and lawful.

111.    Plaintiffs HUO and VALDEZ and the California Class lost money or property as a result of Defendant's UCL violations because (a) they would not have purchased the Products on the same terms absent Defendant's illegal conduct as set forth herein, or if the true facts were

known concerning Defendant's representations; (b) they paid a price premium for the Products due to Defendant's misrepresentations and deceptive packaging; and (c) the Products did not have the quantities as promised.

## COUNT V

## VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW, CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17500, *ET SEQ*.

112.     Plaintiffs HUO and VALDEZ reallege and incorporate herein by reference the allegations contained in all preceding paragraphs and further allege as follows:

113.     Plaintiffs HUO and VALDEZ bring this claim individually and on behalf of the members of the proposed California Class for Defendant's violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.

114.     Under the FAL, the State of California makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

115.     Defendant engaged in a scheme of offering misbranded ibuprofen Products for sale to Plaintiffs HUO and VALDEZ and the California Class members by way of product packaging, advertising, and other promotional materials including the Internet. These materials misrepresented the true content and nature of the misbranded Advil® Products. Defendant's advertisements and inducements were made in California and come within the definition of advertising as contained in Bus. & Prof. Code § 17500, *et seq*. in that the product packaging,

28

labeling, and promotional materials were intended as inducements to purchase Defendant's Products, and are statements disseminated by Defendant to Plaintiffs HUO and VALDEZ and the California Class members. Defendant knew that these statements were unauthorized, inaccurate, and misleading.

116. Defendant's packaging with non-functional slack-fill violates federal and California law because the consumers are deceived or misled into believing that the bottles contain more ibuprofen pills than they actually do.

117. Defendant violated § 17500, *et seq*. by misleading Plaintiffs HUO and VALDEZ and the California Class to believe that the Advil® bottles contain more ibuprofen pills than they actually do.

118. Defendant knew or should have known, through the exercise of reasonable care that the Products were and continue to be misbranded, and that its representations about the Products were untrue and misleading.

119. Plaintiffs HUO and VALDEZ and the California Class lost money or property as a result of Defendant's FAL violations because (a) they would not have purchased the Products on the same terms absent Defendant's illegal conduct as set forth herein, or if the true facts were known concerning Defendant's representations; (b) they paid a price premium for the Products due to Defendant's misrepresentations and deceptive packaging and marketing; and (c) the Products did not have the quantities as promised.

## COUNT VI

### VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. ANN. § 501.201, *ET SEQ.*

120. Plaintiff SOUSA realleges and incorporates by reference the allegations contained in all preceding paragraphs and further alleges as follows:

121.    Plaintiff SOUSA brings this claim individually and on behalf of the Florida Class for Defendant's violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*

122.    Section 501.204(1) of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") makes "unfair or deceptive acts or practices in the conduct of any trade or commerce" in Florida unlawful.

123.    The Florida Deceptive and Unfair Trade Practices Act does not require plaintiffs to prove individual reliance. *See Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 692 (S.D. Fla. 2010).

124.    Throughout the Class Period, by packaging, advertising, marketing, distributing, and/or selling the Products in containers made, formed or filled as to be misleading, to Plaintiff SOUSA and other Florida Class members, Defendant violated the FDUTPA by engaging in false advertising concerning the Products.

125.    Defendant has made and continues to make deceptive, false and misleading statements concerning the Products, namely manufacturing, selling, marketing, packaging and advertising the Products as alleged herein. Defendant falsely represented that the Products contain many more ibuprofen pills than they actually do.

126.    Plaintiff SOUSA and other Florida Class members seek to enjoin such unlawful acts and practices as described above. Each of the Florida Class members will be irreparably harmed unless the unlawful actions of Defendant are enjoined in that they will continue to be unable to rely on the Defendant's misleading packaging.

127.    Had Plaintiff SOUSA and the Florida Class members known the misleading and/or deceptive nature of Defendant's claims, they would not have purchased the Products.

128.    Plaintiff SOUSA and the Florida Class members were injured in fact and lost money as a result of Defendant's conduct of improperly packaging the Products with excessive empty space. Plaintiff SOUSA and the Florida Class members paid for Defendant's premium priced Products, but received Products that were worth less than the Products for which they paid.

129.    Plaintiff SOUSA and the Florida Class seek declaratory relief, enjoining Defendant from continuing to disseminate its false and misleading statements, actual damages plus attorney's fees and court costs, and other relief allowable under the FDUTPA.

## COUNT VII

### NEGLIGENT MISREPRESENTATION
### (All States)

130.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein, and further allege as follows:

131.    Defendant, directly or through their agents and employees, made false representations, concealment and nondisclosures to Plaintiffs and members of the Class. Defendant, through its deceptive packaging of the Products, makes uniform representations regarding the Products.

132.    To state a claim for negligent misrepresentation, a plaintiff must allege that "(1) the parties stood in some special relationship imposing a duty of care on the defendant to render accurate information, (2) the defendant negligently provided incorrect information, and (3) the plaintiff reasonably relied upon the information." *Amos v. Biogen Idec, Inc.*, No. 13-CV-6375T, 2014 WL 2882104, at *5 (W.D.N.Y. June 25, 2014)

133.    To determine the existence of a "special relationship" in a commercial transaction, a court examines three factors: "'whether the person making the representation held

or appeared to hold a unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose.'" *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 474–75 (E.D.N.Y 2013).

134.   Plaintiffs and Defendant had a special relationship. Defendant, as the manufacturer, packager, labeler and initial seller of the Products purchased by the Plaintiffs, had a duty to disclose the true nature of the Products and not sell the Products in misleading containers. Defendant had exclusive knowledge of material facts not known or reasonably accessible to the Plaintiffs; Defendant actively concealed material facts from the Plaintiffs and Defendant made partial representations that are misleading because some other material fact has not been disclosed. By packaging and distributing the Products in oversized containers, Defendant created an impression that the product packaging was proportionate to the actual volume of product contained therein.

135.   Defendant's failure to disclose the misleading nature of the Product packaging constitutes material misrepresentations and misleading omissions. Such misrepresentations and misleading omissions materially misled the Plaintiffs who relied on Defendant in this regard to disclose all material facts accurately and truthfully and fully.

136.   Plaintiffs and members of the Class reasonably relied on Defendant's representation that their Products contain more product than actually packaged.

137.   In making the representations of fact to Plaintiffs and members of the Class described herein, Defendant has failed to fulfill its duty to disclose the material facts set forth above.  The direct and proximate cause of this failure to disclose was Defendant's negligence and carelessness.

138.    Defendant, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true. Defendant made and intended the misrepresentations to induce the reliance of Plaintiffs and members of the Class.

139.    Plaintiffs and members of the Class would have acted differently had they not been misled – i.e. they would not have paid money for the Products in the first place.

140.    Defendant has a duty to correct the misinformation it disseminated through the deceptive packaging of the Products. By not informing Plaintiffs and members of the Class, Defendant breached its duty. Defendant also profited financially as a result of this breach.

141.    Plaintiffs and members of the Class relied upon these false representations and nondisclosures by Defendant when purchasing the Products, upon which reliance was justified and reasonably foreseeable.

142.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for Products, and any interest that would have been accrued on all those monies, all in an amount to be determined according to proof at time of trial.

143.    Defendant acted with intent to defraud, or with reckless or negligent disregard of the rights of Plaintiffs and members of the Class.

144.    Plaintiffs and members of the Class are entitled to damages, including punitive damages.

## COUNT VIII

## UNJUST ENRICHMENT
### (All States)

145.    Plaintiffs reallege and incorporate by reference the above paragraph as if set forth

herein, and further allege the following:

146.    Plaintiffs bring this claim individually and on behalf of the nationwide Class.

147.    Plaintiffs are entitled, under Rule 8(d), to plead unjust enrichment as an

alternative theory of liability. *See St. John's Univ., New York*, 757 F. Supp. 2d. at 183-84

(E.D.N.Y. 2010).

148.    Defendant misled consumers about the volume of the Products contained within

the containers in comparison to the size of the Products' packaging. The reasonable consumer is

given the false impression that he/she is buying more product than they are actually receiving.

149.    As a result of Defendant's deceptive, fraudulent and misleading packaging,

advertising, marketing and sales of Products, Defendant was enriched, at the expense of and

members of the Class, through the payment of the purchase price for Defendant's Products.

150.    Plaintiffs and members of the Class conferred a tangible benefit on Defendant,

without knowledge that the Products were packaged in containers made, formed or filled as to be

misleading. Defendant accepted and retained the non-gratuitous benefits conferred by Plaintiffs

and members of the Class with full knowledge and awareness of that, as a result of Defendant's

unconscionable wrongdoing, Plaintiffs and members of the Class were not receiving the Products

as they had been represented by Defendant, and which reasonable consumers would have

expected.

151.    Defendant will be unjustly enriched if it are allowed to retain the non-gratuitous

benefits conferred by Plaintiffs and members of the Class, and each Class member is entitled to

an amount equal to the amount they enriched Defendant and for which Defendant has been unjustly enriched.

152.     Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiffs, and all others similarly situated, in light of the fact that the volume of the Products purchased by Plaintiffs and the Class, was not what Defendant purported it to be by its packaging. Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiffs, and all others similarly situated, for selling its Products in packaging with excessive empty space. In order for Plaintiffs and Class members to be made whole, they need to receive either the price premium paid for the Products or a refund of the purchase price of the Products equal to the percentage of excessive empty space in the Products.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief and judgment against Defendant as follows:

A.  For an Order certifying the nationwide Class and under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent members of the Class;

B.  For an order certifying the New York Class, appointing Plaintiff FERMIN representative of the New York Class, and designating his counsel as counsel for the New York Class;

C.  For an order certifying the California Class, appointing Plaintiffs HUO and VALDEZ representatives of the California Class, and designating their counsel as counsel for the California Class;

D.  For an order certifying the Florida Class, appointing Plaintiff SOUSA representative of the Florida Class, and designating her counsel as counsel for the Florida Class;

E.  For an Order declaring the Defendant's conduct violates the statutes referenced herein;

F.  For an Order finding in favor of Plaintiffs and the nationwide Class;

G.  For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

H.  For prejudgment interest on all amounts awarded;

I.  For an Order of restitution and all other forms of equitable monetary relief;

J.  For injunctive relief as pleaded or as the Court may deem proper;

K.  For an Order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit; and

L.  For such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs, individually and on behalf of all others similarly situated, hereby demand a jury trial on all claims so triable.

Dated: July 31, 2015

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorney for Plaintiffs and the Class*


/s/ C.K. Lee_____
BY:  C.K. Lee, Esq.