## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

```
* * * * * * * * * * * * * * * * * * * * * * * * * *
                                                  *
MATTHEW FERMIN, LICHUN HUO, JOSEFINA              *   Hon. Sterling Johnson, Jr.
VALDEZ, ADRIANA SOUSA, and JOHN DOES, on          *   Civil Action No. 1:15-cv-02133-SJ-RER
behalf of themselves and all others similarly situated,  *
                                                  *
                     Plaintiffs,                  *
                                                  *
          v.                                      *   ORAL ARGUMENT REQUESTED
                                                  *
                                                  *   Electronically Filed
PFIZER INC.,                                      *
                                                  *
                     Defendant.                   *
                                                  *
                                                  *
                                                  *
* * * * * * * * * * * * * * * * * * * * * * * * * *
```

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

*Of Counsel:*

John H. Beisner
Jessica D. Miller
Geoffrey M. Wyatt
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Tel: (202) 371-7000
Fax: (202) 393-5760
E-mail: John.Beisner@skadden.com,
        Jessica.Miller@skadden.com
        Geoffrey.Wyatt@skadden.com

Thomas E. Fox
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
4 Times Square
New York, New York 10036
Tel: (212) 735-3000
Email: thomas.fox@skadden.com

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 4

I.     PLAINTIFFS' CLAIMS FAIL BECAUSE THEY CANNOT ALLEGE THAT THEY
       WERE MISLED. ........................................................................................................ 5

       A.     Plaintiffs Fail To Adequately Allege A Misrepresentation. .............................. 5

       B.     Plaintiffs Fail To Sufficiently Allege Causation Or Reliance........................... 11

       C.     Plaintiffs Fail To Sufficiently Allege Injury. ................................................... 16

II.    PLAINTIFFS' CLAIMS FOR NEGLIGENT MISREPRESENTATION AND UNJUST
       ENRICHMENT FAIL FOR ADDITIONAL REASONS ............................................. 19

       A.     Plaintiff Fermin's Negligent-Misrepresentation Claim Fails For Additional
              Reasons. ......................................................................................................... 19

       B.     Plaintiffs' Claims For Unjust Enrichment Fail For Additional
              Reasons. ......................................................................................................... 20

III.   ALL OF PLAINTIFFS' CLAIMS ARE PREEMPTED................................................. 22

CONCLUSION ................................................................................................................... 25

## TABLE OF AUTHORITIES

Page(s)

### FEDERAL CASES

*In re Actimmune Marketing Litigation*,
    No. C 08-02376 MHP, 2009 U.S. Dist. LEXIS 103408 (N.D. Cal. Nov. 6, 2009) ........................ 6

*Allianz Risk Transfer v. Paramount Pictures Corp.*,
    No. 08 Civ. 10420 (TPG), 2010 U.S. Dist. LEXIS 32218
    (S.D.N.Y. Mar. 31, 2010) .................................................................................................. 6

*Allocco v. City of Coral Gables*,
    221 F. Supp. 2d 1317 (S.D. Fla. 2002) ............................................................................... 6

*Alvarez v. Royal Caribbean Cruises, Ltd.*,
    905 F. Supp. 2d 1334 (S.D. Fla. 2012) ............................................................................. 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).......................................................................................................... 4

*Avoy v. Turtle Mountain, LLC*,
    No. 13-CV-0236-LHK, 2014 WL 587173 (N.D. Cal. Feb. 14, 2014)........................ 12, 14, 15, 16

*Baggett v. Hewlett-Packard Co.*,
    No. SACV 07-0667 AG (RNBx), 2009 U.S. Dist. LEXIS 95241
    (C.D. Cal. Sept. 29, 2009)........................................................................... 5, 17, 18, 19

*Barnes v. United States*,
    204 F. App'x 918 (2d Cir. 2006) ....................................................................................... 4

*Barocio v. Bank of America, N.A.*,
    No. C 11-5636 SBA, 2012 WL 3945535 (N.D. Cal. Sept. 10, 2012)............................................ 20

*Barron Partners, LP v. LAB123, Inc.*,
    593 F. Supp. 2d 667 (S.D.N.Y. 2009)............................................................................... 19

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................................... 4

*Bishop v. 7-Eleven, Inc.*,
    37 F. Supp. 3d 1058 (N.D. Cal. 2014) ......................................................................... 14, 17

*Brown v. Bank of America, N.A.*,
    457 F. Supp. 2d 82 (D. Mass. 2006) ............................................................................ 15, 16

*Burns v. Winnebago Industries, Inc.*,
    No. 8:13-cv-1427-T-24 MAP, 2013 WL 4437246 (M.D. Fla. Aug. 16, 2013) ............................ 20

*In re Celexa & Lexapro Marketing & Sales Practices Litigation*,
    MDL No. 09-2067-NMG, No. 13-11343 NMG, 2014 U.S. Dist. LEXIS 28108
    (D. Mass. Mar. 5, 2014) ........................................................................................... 24

*City of Miami v. Bank of America Corp.*,
    No. 13-24506-CIV-DIMITROULEAS, 2014 U.S. Dist. LEXIS 95445
    (S.D. Fla. July 8, 2014) ............................................................................................ 12

*Clean Air Markets Group v. Pataki*,
    338 F.3d 82 (2d Cir. 2003)........................................................................................ 23

*Costa v. Kerzner International Resorts, Inc.*,
    No. 11-60663-CV-COHN, 2011 WL 2519244 (S.D. Fla. June 23, 2011)...................... 8

*Dallas Aerospace, Inc. v. CIS Air Corp.*,
    352 F.3d 775 (2d Cir. 2003)...................................................................................... 19

*Ebner v. Fresh Inc.*,
    No. SACV 13-00477 JVS(RNBx), 2013 WL 9760035
    (C.D. Cal. Sept. 11, 2013)......................................................................... 5, 7, 8, 10, 24, 25

*Elkind v. Revlon Consumer Products Corp.*,
    No. 14-CV-2484(JS)(AKT), 2015 WL 2344134 (E.D.N.Y. May 14, 2015) .................. 17

*Fenerjian v. Nongshim Co.*,
    No. 13-cv-04115-WHO, 2014 WL 5685562 (N.D. Cal. Nov. 4, 2014) ......................... 22

*Figy v. Frito-Lay North America, Inc.*,
    67 F. Supp. 3d 1075 (N.D. Cal. 2014) ....................................................................... 13

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013)..................................................................................... 4, 7

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ........................................................................................ 9

*Geier v. American Honda Motor Co.*,
    529 U.S. 861 (2000).................................................................................................. 23

*Gitson v. Trader Joe's Co.*,
    No. 13-cv-01333-WHO, 2013 U.S. Dist. LEXIS 144917 (N.D. Cal. Oct. 4, 2013)........ 9

*GS2 Corp. v. Regions Bank*,
    No. 11-23458-Civ., 2012 WL 1014750 (S.D. Fla. Mar. 23, 2012).................................. 6

*Jones v. Rath Packing Co.*,
    430 U.S. 519 (1977).................................................................................................. 23

*Kane v. Chobani, Inc.*,
  No. 12-CV-02425-LHK, 2013 U.S. Dist. LEXIS 134385
  (N.D. Cal. Sept. 19, 2013) ........................................................................... 14

*Kelly v. BP West Coast Products LLC*,
  No. 2:14-cv-01507-KJM-CKD, 2014 U.S. Dist. LEXIS 178479
  (E.D. Cal. Dec. 29, 2014)............................................................................. 24

*Krouch v. Wal-Mart Stores, Inc.*,
  No. 12-cv-02217-YGR, 2014 U.S. Dist. LEXIS 152755
  (N.D. Cal. Oct. 28, 2014) .................................................................. 12, 16, 17

*Kuenzig v. Kraft Foods, Inc.*,
  No. 8:11-cv-838-T-24 TGW, 2011 WL 4031141 (M.D. Fla. Sept. 12, 2011)................................7

*LaCourt v. Specific Media, Inc.*,
  No. SACV 10-1256-GW(JCGx), 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) ......................... 21

*Licul v. Volkswagen Group of America, Inc.*,
  No. 13-61686-CIV, 2013 WL 6328734 (S.D. Fla. Dec. 5, 2013)........................................... 20, 21

*Linville v. Ginn Real Estate Co.*,
  697 F. Supp. 2d 1302 (M.D. Fla. 2010) ................................................................. 14, 16

*Makaeff v. Trump University, LLC*,
  No. 3:10-cv-0940-GPC-WVG, 2014 WL 688164 (S.D. Cal. Feb. 21, 2014)............................... 14

*McKinniss v. Sunny Delight Beverages Co.*,
  No. CV 07-02034-RGK (JCx), 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) ...................... passim

*Miller v. Wells Fargo Bank, N.A.*,
  994 F. Supp. 2d 542 (S.D.N.Y. 2014)........................................................................ 11

*Monday v. Saxon Mortgage Services, Inc.*,
  No. CIV. 2:10-989 WBS KJM, 2010 WL 10065312 (E.D. Cal. Nov. 29, 2010) ......................... 17

*Myers-Armstrong v. Actavis Totowa, LLC*,
  382 F. App'x 545 (9th Cir. 2010) .......................................................................... 21

*Network Enterprises, Inc. v. Reality Racing, Inc.*,
  No. 09 Civ. 4664 (RJS), 2010 U.S. Dist. LEXIS 89598 (S.D.N.Y. Aug. 24, 2010)..................... 12

*Nivia v. Nationstar Mortgage, LLC*,
  No. 13-Civ-24080, 2014 WL 4146889 (S.D. Fla. Aug. 21, 2014) ................................... 13

*Porwick v. Fortis Benefits Insurance Co.*,
  No. 99 CV 10122(GBD), 2004 WL 2793186 (S.D.N.Y. Dec. 6, 2004) ....................... 16

*Prohias v. Pfizer, Inc.*,
    485 F. Supp. 2d 1329 (S.D. Fla. 2007) .................................................................... 16, 17

*Robinson v. HSBC Bank USA*,
    732 F. Supp. 2d 976 (N.D. Cal. 2010) ........................................................................ 21

*Rooney v. Sierra Pacific Windows*,
    No. 10-CV-00905-LHK, 2011 U.S. Dist. LEXIS 117294
    (N.D. Cal. Oct. 11, 2011) ............................................................................................ 13

*St. John's University v. Bolton*,
    757 F. Supp. 2d 144 (E.D.N.Y. 2010) ........................................................................ 21

*Sugawara v. Pepsico, Inc.*,
    No. 2:08-cv-01335-MCE-JFM, 2009 WL 1439115 (E.D. Cal. May 21, 2009) ............. 5

*Tuosto v. Philip Morris USA Inc.*,
    No. 05 Civ. 9384(PKL), 2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007) ................. 13, 19

*In re Ultrafem Inc. Securities Litigation*,
    91 F. Supp. 2d 678 (S.D.N.Y. 2000) ............................................................................ 4

*United States v. 174 Cases . . . Delson Thin Mints*,
    287 F.2d 246 (3d Cir. 1961) ................................................................................... 10, 11

*Verzani v. Costco Wholesale Corp.*,
    No. 09 Civ. 2117(CM), 2010 WL 3911499 (S.D.N.Y Sept. 28, 2010) ..................... 6, 8

*Waldman v. New Chapter, Inc.*,
    714 F. Supp. 2d 398 (E.D.N.Y. 2010) ........................................................................ 11

*Williamson v. Reinalt-Thomas Corp.*,
    No. 5:11-CV-03548-LHK, 2012 WL 1438812 (N.D. Cal. Apr. 25, 2012) .................. 22

*Zlotnick v. Premier Sales Group, Inc.*,
    480 F.3d 1281 (11th Cir. 2007)  .................................................................................... 7

## STATE CASES

*Corsello v. Verizon N.Y., Inc.*,
    18 N.Y.3d 777, 967 N.E.2d 1177, 944 N.Y.S.2d 732 (2012) ..................................... 21

*Hill v. Roll International Corp.*,
    128 Cal. Rptr. 3d 109 (Ct. App. 2011) ........................................................................ 22

*Hudson River Club v. Consolidated Edison Co.*,
    275 A.D.2d 218, 712 N.Y.S.2d 104 (2000) ................................................................... 5

*MBIA Insurance Corp. v. Royal Bank of Canada*,
    28 Misc. 3d 1225(A), 958 N.Y.S.2d 62, 2010 WL 3294302 (Sup. Ct. 2010) .............................. 19

*N.G.L. Travel Associates v. Celebrity Cruises, Inc.*,
    764 So. 2d 672 (Fla. Dist. Ct. App. 2000) .................................................................. 18

*Private One of NY, LLC v. Golden Touch Transportation, Inc.*,
    31 Misc. 3d 1221(A), 930 N.Y.S.2d 176, 2011 WL 1674845 (Sup. Ct. 2011) ............................ 12

*Prohias v. AstraZeneca Pharmaceuticals, L.P.*,
    958 So. 2d 1054 (Fla. Dist. Ct. App. 2007) ............................................................. 12, 24

*Simpson v. Kroger Corp.*,
    219 Cal. App. 4th 1352 (2013) .............................................................................. 9

*Sperry v. Crompton Corp.*,
    8 N.Y.3d 204, 863 N.E.2d 1012, 831 N.Y.S.2d 760 (2007) ...................................................... 22

*State ex rel. Spitzer v. Daicel Chemical Industries, Ltd.*,
    42 A.D.3d 301, 840 N.Y.S.2d 8 (2007) .................................................................... 22

*In re Tobacco II Cases*,
    207 P.3d 20 (Cal. 2009) ...................................................................................... 14

## STATUTES

15 U.S.C. § 1454(a) .......................................................................................... 24

15 U.S.C. § 1454(c) .......................................................................................... 24

21 U.S.C. § 352(i) ............................................................................................ 2

21 U.S.C. § 379r(a) .......................................................................................... 23

Fla. Stat. § 501.204(1) ...................................................................................... 5

Fla. Stat. § 501.212(1) ...................................................................................... 24

N.Y. G.B.L. § 349 ...................................................................................... passim

N.Y. G.B.L. § 349(a) .......................................................................................... 5

N.Y. G.B.L. § 349(h) .................................................................................... 16, 17

## REGULATIONS

21 C.F.R. § 100.100 .......................................................................................... 24

21 C.F.R. § 201.60 ........................................................................................... 23

21 C.F.R. § 201.62 ..................................................................................... 23

21 C.F.R. § 201.66 ................................................................................. 23, 24

21 C.F.R. § 201.66(c) ................................................................................. 23

21 C.F.R. § 201.66(d) ................................................................................. 23

*Over-The-Counter Human Drugs; Labeling Requirements*, 64 Fed. Reg. 13,254 (Mar. 17, 1999) ........... 24

## <u>INTRODUCTION</u>

Pfizer's first motion to dismiss highlighted the implausibility of plaintiffs' claims that they were misled regarding the number of pills included in Advil packages even though each package – like the one below – includes a ***prominent and express disclosure of the number of pills it contains***.  In response, plaintiffs submitted an Amended Complaint that only further highlights this intractable problem. According to plaintiffs' Amended Complaint, they looked at packages like this one – on which the pill count (24) is prominently displayed – and ***instead of reading how many pills they contain, they decided to ignore what was written on the box and guess how many pills were inside***, which resulted in their being misled.



(Am. Compl. Ex. A, at 6.)

Plaintiffs' Amended Complaint only confirms that their claims should be dismissed.  A product that clearly and accurately displays the number of pills included in each package cannot be said to misrepresent the amount of product being purchased simply because some consumers allegedly prefer to ignore the pill count and rely instead on their own guess.  Nor would any reasonable consumer assume that an Advil bottle contains more pills than the number prominently displayed on the packaging, defeating plaintiffs' allegations of reliance and causation.  And in any event, plaintiffs could never prove injury because they received precisely the number of pills promised on Advil packaging.

Plaintiffs' Amended Complaint also fails to remedy other fatal flaws in their pleadings.  For

example, plaintiffs' claims for negligent misrepresentation and unjust enrichment are barred because they still have not adequately alleged the required elements of these claims.  In addition, all of plaintiffs' claims are preempted because applicable federal law does not impose the strict "slack-fill" requirements on over-the-counter drugs that plaintiffs are attempting to impose here.

For all of these reasons, and because plaintiffs have already amended their pleadings in an attempt to address the problems identified by Pfizer, the Court should dismiss this case with prejudice.

## BACKGROUND

On April 14, 2015, plaintiffs brought a proposed class action against Pfizer, alleging that the product packaging for many of its Advil products was misleading.  (*See generally* Class Action Compl. ("Original Compl."), Dkt. No. 1.)  On June 29, 2015 Pfizer served a motion to dismiss, as well as a motion to strike plaintiffs' nationwide class claims.  In lieu of responding to the motion to dismiss, plaintiffs amended their original Complaint on July 31, 2015.  (*See* First Amended Class Action Complaint ("Amended Complaint" or "Am. Compl."), Dkt. No. 13.)

In the Amended Complaint, plaintiffs Matthew Fermin, a New York resident, Lichun Huo and Josefina Valdez, California residents, and Adriana Sousa, a Florida resident, allege that Pfizer misled them into purchasing Advil ibuprofen products by using bigger-than-necessary packaging – despite the fact that the packaging stated the exact amount of product it contained.  (*See id*. ¶¶ 18-21.)[1]  Specifically, plaintiffs allege that Pfizer intended to "induce consumers to purchase the ibuprofen products" by manufacturing, marketing, and selling the products "(i) in containers made, formed or filled as to be misleading and (ii) with excessive empty space (hereinafter, 'non-functional slack-fill'), in violation of the Federal Food Drug & Cosmetic Act ('FDCA')."  (*Id*. ¶ 2 (citing 21 U.S.C. § 352(i)).)  Plaintiffs define "[n]on-functional slack-fill" as "the difference between the actual capacity of a container[] and the *volume*

---

[1]      Plaintiffs' original Complaint was brought on behalf of these same named plaintiffs, as well as unidentified, "John Doe" plaintiffs from Illinois, Michigan and New Jersey.  (*See* Original Compl. ¶¶ 22-24.)  These "John Doe" plaintiffs have been dropped from the Amended Complaint, as have plaintiffs' statutory consumer protection claims under the laws of Illinois, Michigan and New Jersey.

of the product contained within."  (*Id.* ¶ 31 (emphasis added).)

According to plaintiffs, they purchased Advil ibuprofen at "a premium . . . over other ibuprofen products sold on the market" in "reliance on [Pfizer's] packaging misrepresentations."  (*Id.* ¶¶ 44, 18-21.)[2]  Specifically, plaintiffs allege that the products contain "non-functional slack fill" in that "[t]he size of the bottles in comparison to the volume of the Product contained therein make it appear as if the consumer is buying more than what is actually being sold."  (*Id.* ¶¶ 4-5.)  Each plaintiff claims that Pfizer's allegedly "oversized containers misled [the plaintiff] to believe that [he or she] was receiving more of the Products than [he or she] actually was and [he or she] was financially injured as a result."  (*Id.* ¶¶ 18-21.)  Plaintiffs allege that they "would not have bought the Products" if they had known that they were "packaged misleadingly."  (*Id.* ¶ 50.)

Exhibit A, attached to plaintiffs' Amended Complaint, provides images of the containers cited as "misleading" in the Amended Complaint.  (*See id.*, Ex. A.)  These images show that each container was labeled on the front with the tablet count.  (*Id.*)  Plaintiffs nonetheless allege that "[t]he size of the bottles is likely to mislead ordinary consumers as to the quantity of ibuprofen contained in the bottles, even despite the labels on the bottles disclosing the number of pills and the milligrams of ibuprofen."  (*Id.* ¶ 36.)  Further, plaintiffs allege that they "did not rely on the labeling specifying the number of ibuprofen pills in the Products, but rather relied on the sizes of the packaging and dispensing bottles, which led them to have an expectation that the entire volume of the packaging would be filled to capacity with pills."  (*Id.* ¶ 37.)

Based on these allegations, plaintiffs assert claims for violation of several statutes:  New York General Business Law § 349 ("GBL § 349"), the California Consumer Legal Remedies Act ("CLRA"),

---

[2]      It is unclear what "other ibuprofen products sold on the market" plaintiffs are referring to in light of the fact that their counsel has filed a suit with essentially identical slack-fill allegations involving Motrin, another leading brand of ibuprofen.  *See generally* Compl., ECF No. 1, *Marte v. McNeil-PPC, Inc.*, No. 1:15-cv-01745-ALC (S.D.N.Y. filed Mar. 9, 2015).  Plaintiffs' counsel has since amended that complaint to add claims involving Tylenol as well as Motrin.  *See generally* First Am. Compl., ECF No. 10, *Marte v. McNeil-PPC, Inc.*, No. 1:15-cv-01745-ALC (S.D.N.Y. filed May 29, 2015).

California's Unfair Competition Law ("UCL"), California's False Advertising Law ("FAL") and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").  (*Id.* ¶¶ 73-129.)  Plaintiffs also assert claims for negligent misrepresentation and unjust enrichment.  (*Id.* ¶¶ 130-52.)  Plaintiffs seek declaratory and injunctive relief, as well as compensatory damages and attorneys' fees.  (*See id.*, Prayer for Relief.)

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Rather, plausibility depends on "the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (internal quotation marks and citation omitted).

Courts in this Circuit have recognized that dismissal with prejudice is appropriate where a plaintiff is unable to allege plausible, valid claims after having an opportunity to amend his or her complaint in response to a prior motion to dismiss.  *See Barnes v. United States*, 204 F. App'x 918, 920 (2d Cir. 2006) (affirming dismissal of complaint without leave to replead where plaintiff, a pro se litigant, had previously amended his complaint after a motion to dismiss); *In re Ultrafem Inc. Sec. Litig.*, 91 F. Supp. 2d 678, 704 (S.D.N.Y. 2000) (granting motion to dismiss with prejudice where "plaintiffs had an adequate opportunity to replead after they were informed of the defendants' views of the failures of the prior complaints").

Here, the Court should dismiss the Amended Complaint with prejudice because it fails to plausibly state claims for consumer fraud, negligent misrepresentation, and unjust enrichment.  ***First***, all of plaintiffs' claims fail under California, Florida and New York law because the Complaint does not contain any plausible allegation that plaintiffs were misled or deceived by Pfizer's packaging.  ***Second***,

plaintiffs' claims fail for a variety of other claim-specific reasons.  And *third*, plaintiffs' claims are all preempted by federal law.

## I.   PLAINTIFFS' CLAIMS FAIL BECAUSE THEY CANNOT ALLEGE THAT THEY WERE MISLED.

Plaintiffs fail to state any legitimate claims under their respective states' laws because they do not – and cannot – plausibly allege that they were misled, deceived or injured by Pfizer's product packaging.

### A.   Plaintiffs Fail To Adequately Allege A Misrepresentation.

Plaintiffs' claims under their states' consumer-fraud statutes differ in a number of respects, but *all* require proof of a deceptive act.  *See* Fla. Stat. § 501.204(1) (making unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce"); GBL § 349(a) (making unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service"); *Sugawara v. Pepsico, Inc.*, No. 2:08-cv-01335-MCE-JFM, 2009 WL 1439115, at *2-4 (E.D. Cal. May 21, 2009) (claims under California's UCL, CLRA, and FAL require proof of unfair, deceptive, or misleading practices or advertising).[3]

Similarly, plaintiffs' claims for negligent misrepresentation under their home states' laws also require the "assertion of a false statement."  *McKinniss v. Sunny Delight Beverages Co.*, No. CV 07-02034-RGK (JCx), 2007 WL 4766525, at *5 (C.D. Cal. Sept. 4, 2007); *Hudson River Club v. Consol.*

---

[3]      Plaintiffs allege that they have a separate basis to proceed under each of the three "prongs" of wrongdoing recognized under the UCL – fraud, unfairness, and unlawfulness.  (*See* Am. Compl. ¶¶ 107-09.)  As applied to this case, plaintiffs' allegations under both the fraudulent and unfair prongs of the statute would require a showing of misrepresentation because both claims are premised on the allegedly misleading nature of the packaging (to the extent anything specific is identified in support of the unfairness prong at all).  (*See id.* ¶¶ 108-09.)  *Ebner v. Fresh Inc.*, No. SACV 13-00477 JVS(RNBx), 2013 WL 9760035, at *3 (C.D. Cal. Sept. 11, 2013) (dismissing plaintiff's allegations of "unfair" and "fraudulent" conduct under both prongs of the UCL where both claims were premised on the misleading design and packaging of the product); *Baggett v. Hewlett-Packard Co.*, No. SACV 07-0667 AG (RNBx), 2009 U.S. Dist. LEXIS 95241, at *10 (C.D. Cal. Sept. 29, 2009) (dismissing plaintiff's UCL claims and holding that "HP did not commit an unfair business practice by providing [p]laintiff with exactly what he bargained for:  a toner cartridge that would print 2,000 color pages").  As detailed in the next two sections, all three prongs require plausible allegations of reliance and injury, neither of which is sufficiently alleged here.

*Edison Co.*, 275 A.D.2d 218, 220, 712 N.Y.S.2d 104, 106 (2000) (affirming dismissal of negligent-misrepresentation claim under New York law because "there was no misrepresentation made by Con Edison"); *Allocco v. City of Coral Gables*, 221 F. Supp. 2d 1317, 1356 (S.D. Fla. 2002) ("[T]he heart of a claim for negligent [mis]representation is a false representation of fact.") (internal quotation marks and citation omitted), *aff'd*, 88 F. App'x 380 (11th Cir. 2003) (unpublished table decision).  Plaintiffs' claims for unjust enrichment, which are rooted in the allegation that Pfizer "misled consumers" (Am. Compl. ¶ 148), also require proof of actual deception.  *See, e.g.*, *In re Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2009 U.S. Dist. LEXIS 103408, at *50 (N.D. Cal. Nov. 6, 2009) (applying California law and dismissing claim for unjust enrichment premised on underlying fraud because "plaintiffs have not specifically pled that defendants engaged in any 'unjust' fraudulent conduct"); *Allianz Risk Transfer v. Paramount Pictures Corp.*, No. 08 Civ. 10420 (TPG), 2010 U.S. Dist. LEXIS 32218, at *27 (S.D.N.Y. Mar. 31, 2010) ("[S]ince we have found no fraud, either under the federal securities laws or the common law of the State of New York, it is difficult to imagine, and plaintiffs do not explain, how the elements of an unjust enrichment claim could be met in this case."); *GS2 Corp. v. Regions Bank*, No. 11-23458-Civ., 2012 WL 1014750, at *2 (S.D. Fla. Mar. 23, 2012) (dismissing unjust-enrichment claim where plaintiff failed to sufficiently allege that defendant "engaged in fraud, affirmative deception, or misrepresentations").

In order "[t]o survive a motion to dismiss under Rule 12(b)(6)" with respect to these claims, a plaintiff must assert sufficient factual allegations to suggest that Pfizer was "engag[ed] in an act or practice that [was] deceptive or misleading in a material way."  *See Verzani v. Costco Wholesale Corp.*, No. 09 Civ. 2117(CM), 2010 WL 3911499, at *2 (S.D.N.Y Sept. 28, 2010) (construing GBL § 349) (internal quotation marks and citation omitted), *aff'd*, 432 F. App'x 29 (2d Cir. 2011).  "The deceptive practice must be likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Id.* (internal quotation marks and citations omitted); *see McKinniss*, 2007 WL 4766525, at *3 ("In order to state a claim under the UCL, FAL, or CLRA, [p]laintiffs must allege that statements or other representations appearing on [d]efendant's product labels are likely to deceive a reasonable consumer.").

6

"The term 'likely' indicates that deception must be probable, not just possible." *McKinniss*, 2007 WL 4766525, at \*3; *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) ("This standard requires a showing of probable, not possible, deception" under the FDUTPA.) (internal quotation marks and citation omitted).  "And in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Fink*, 714 F.3d at 741-42 (concluding that this standard applies to claims under the GBL and the UCL, FAL, and CLRA).  "For example, under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Id*. at 742; *see also Kuenzig v. Kraft Foods, Inc.*, No. 8:11-cv-838-T-24 TGW, 2011 WL 4031141, at \*10 (M.D. Fla. Sept. 12, 2011) (dismissing plaintiff's misrepresentation claims where plaintiff failed to describe the context of the allegedly misleading statement, i.e., did not clarify whether the allegedly misleading statements regarding the "percent fat free" were made in isolation or in proximity to a claim about the total number of calories in the product).  In such circumstances, "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink*, 714 F.3d at 741; *McKinniss*, 2007 WL 4766525, at \*3 ("If an alleged misrepresentation would not deceive a reasonable consumer . . . then any cause of action having deception as an element may be addressed, as a matter of law, on a motion to dismiss.").

Applying these principles, courts have rejected as a matter of law consumer-fraud claims that are based on representations about the amount of product contained in a package where – as here – the quantity is accurately stated.  In *Ebner*, 2013 WL 9760035, at \*1-2, \*8, for example, the plaintiff brought a putative class action asserting causes of action under the CLRA, FAL, and UCL and for unjust enrichment, alleging that the quantity of the lip balm product represented by defendant on various packaging was false, deceptive and misleading because the lip balm tube was designed in such a way that only the first 75% of the product was usable in any reasonable manner.  *See id.* at \*1 (explaining that the "design of the dispensing tube calls for the product to be applied directly to the lips; each tube contains a screw mechanism that pushes the lip balm product up from the bottom of the tube to the top so a consumer can apply the balm by pressing it directly to his or her lips"; and "the tubes contain a solid

plastic mechanical stop device that prevents approximately 25 percent of the product contained within the tube from being applied . . .”).  Thus, although the package stated that it contained 4.3 grams of product, the plaintiff alleged that only 3.3 grams of product was accessible to the consumer.  *Id.*  The plaintiff also contended that the deception was “compounded by oversized dispenser tubes with false weight bottoms, which br[ought] the total weight of [the tubes] to approximately 29 grams.”  *Id.*  As a result, according to the plaintiff, the “packaging ma[de] the product appear to contain a far greater quantity of lip balm tha[n] [was] actually reasonably available to the consumer.”  *Id.*

The court granted a motion to dismiss with prejudice because, among other reasons, the design of the packaging of the product was not deceptive as a matter of law (and therefore also did not constitute an unfair business practice).  *Id.* at *7-9.  According to the court, “in light of [the lip balm’s] label, which accurately state[d] the net quantity of product in the tube, it [was] not reasonable to infer that the oversized packaging and metallic weight would mislead reasonable consumers as to the quantity” the consumers were receiving.  *Id.* at *7 (footnote omitted).  In reaching this conclusion, the court found it significant that the plaintiff could not identify a single case “in which [oversized] packaging, when paired with an accurate net quantity label . . . constituted deceptive marketing practices.”  *Id.*  Because the product “contain[ed] the amount of product stated on the label” – and “consumers [were] receiving the exact amount disclosed” – the court determined that the product’s packaging was “not deceptive or misleading,” which was fatal to plaintiff’s fraud- and unfairness-based claims under the CLRA, FAL, and UCL.  *Id.* at *6-9 & n.4.[4]

---

[4]     *Cf. also, e.g.*, *McKinniss*, 2007 WL 4766525, at *1, *4-5 (granting motion to dismiss claims under the CLRA, FAL, and UCL and for unjust enrichment and other causes of action because “no reasonable consumer, upon review of the label as a whole,” would conclude that the products at issue “contain[ed] significant quantities of fruit or fruit juice”); *Costa v. Kerzner Int’l Resorts, Inc*., No. 11-60663-CV-COHN, 2011 WL 2519244, at *1 n.1, *2 (S.D. Fla. June 23, 2011) (dismissing plaintiff’s FDUTPA claim alleging that defendant engaged in an unfair practice by not paying the entirety of a “mandatory housekeeping gratuity and utility service fee” to the housekeeping staff, where defendant’s statement regarding the combined fee “would not have provided a reasonable person with any belief as to the amount of such charges that would be distributed to housekeeping staff”) (internal quotation marks and citation omitted); *Verzani*, 2010 WL 3911499, at *2 (dismissing plaintiff’s claim under GBL § 349 that “Shrimp Tray with Cocktail Sauce” product labeling stating a net weight of 16 ounces misled

*(cont’d)*

Notably, courts have followed similar logic in cases where – as here – a plaintiff's alleged subjective impression about a product is expressly negated by disclosures in the labeling.  For example, in *Simpson v. Kroger Corp.*, 219 Cal. App. 4th 1352, 1371-1372 (2013), the court affirmed dismissal of consumer-fraud and other claims based on the allegation that packaging for a product labeled as "spreadable butter" misled consumers into believing that the product contained only butter made from cows' milk.  In addition to finding that many of the plaintiff's claims were preempted by federal food-labeling laws, the court noted that the plaintiff's claims also failed because she "has not, and as a matter of law cannot, allege that a reasonable consumer would have been misled by the labels" at issue.  *Id.* at 1370.  As the court explained, "both the top and side panels of the tubs in which the products are sold" stated that the products contained olive and canola oil in addition to butter.  *Id.* at 1372.  Accordingly, "no reasonable person could purchase these products believing that they had purchased a product containing only butter."  *Id.*

Similarly, in *Gitson v. Trader Joe's Co.*, No. 13-cv-01333-WHO, 2013 U.S. Dist. LEXIS 144917, at *21 (N.D. Cal. Oct. 4, 2013), the court dismissed consumer-fraud claims based on the allegation that packaging for soy milk misleadingly suggested that it contained milk from cows.  Because the product label contained a disclaimer that "Organic Soy Milk is LACTOSE & DAIRY FREE and is an alternative to dairy milk," the court held that it "is not plausible to claim, as the plaintiffs do, that a reasonable consumer would believe that Organic Soy Milk is cow's milk."  *Id.* at *21 (internal quotation marks and citation omitted); *see also Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (affirming dismissal of consumer-fraud claims based on the allegation that a magazine sweepstakes promotion was misleading "since it is likely that the reader will review the large print [stating that he or she is a winner] and ignore the qualifying language in small print"; this theory "is not persuasive" because the "qualifying language

_____

*(cont'd from previous page)*
consumers into believing they were receiving 16 ounces of shrimp where a reasonable consumer would have realized that the net weight included the other items visible on the tray – including lemon wedges, cocktail sauce, and lettuce – particularly because the name of the product alone also included cocktail sauce and its list of ingredients including non-shrimp items).

appears immediately next to the representations it qualifies and no reasonable reader could ignore it").

The logic of these cases dooms plaintiffs' claims here.  As explained above, plaintiffs allege that Pfizer "has . . . routinely packaged [Advil] in containers made, formed or filled as to be ***misleading*** and has routinely employed slack-filled packaging containing non-functional slack-fill to ***mislead*** customers into believing that they were receiving more [p]roducts than they actually were."  (Am. Compl. ¶ 30 (emphases added); *see also id.* ¶ 5 ("The size of the bottles in comparison to the volume of the [p]roducts contained therein make it appear as if the consumer is buying more than what is actually being sold.").)  But plaintiffs' central theory is directly contradicted by plaintiffs' own identification of the products at issue by pill count (*see, e.g.*, *id.* ¶ 32 ("Advil® 10 Tablet Product" . . . "Advil® 100 Caplet Product")) and their attachment of photographs showing that the product packaging prominently displays the pill count (*see* Compl. Ex. A).  In other words, as in *Ebner*, the container states "the amount of product . . . on the label," and "consumers are receiving the exact amount disclosed."  2013 WL 9760035, at *7.  "[I]n light of [the Advil products'] label, . . . it is not reasonable to infer that the [allegedly] oversized packaging . . .would mislead reasonable consumers as to the quantity they are receiving."  *Id.* (footnote omitted).  And as in *Simpson* and *Gitson*, it makes no difference that plaintiffs claim to have formed subjective assessments of the quantity of pills in each container.  (*See* Am. Compl. ¶¶ 36, 38 (asserting, e.g., that consumers will "logically believe the larger bottles contain more product").)  Rather, any such subjective impression was expressly negated by the prominent and accurate disclosures of pill counts, which any reasonable consumer would notice and credit above their own subjective impressions of the number of pills in an Advil container.

None of the cases plaintiffs cite in their Amended Complaint counsel otherwise.  For example, plaintiffs allege that *United States v. 174 Cases . . . Delson Thin Mints*, 287 F.2d 246 (3d Cir. 1961), *aff'd*, 302 F.2d 724 (3d Cir. 1962) stands for the proposition that "product packaging [that] specifies the number of pills contained within" is still misleading if it contains slack-fill.  (Am. Compl. ¶ 38.)  Not so.  In *Delson*, the court reversed dismissal of slack-fill claims based on the allegation that containers of chocolate-covered mints contained empty space – but there was ***no allegation in that case that the***

*product packaging specifically stated the number of mints in each container*.  287 F.2d 246.  Instead, the court expressly noted that the plaintiff there "introduced substantial uncontradicted evidence to show that purchasers of the mints, opening the boxes, expected to find far more mints in them than were there." *Id.* at 248.  By contrast, here, the number of Advil pills contained in each package was clearly and accurately listed on the label.  As a result, no purchaser could have reasonably expected that there would be more than that number of pills inside.

Plaintiffs' reliance on *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398 (E.D.N.Y. 2010) (Am. Compl. ¶ 38), is similarly misplaced.  There, the court indicated that plaintiffs could go forward on a theory that a half-filled container of a "spoonable whole food" was misleading – even though the product's weight was listed on the packaging – because the package misrepresented the "*volume and density*" of the product, which were not stated on the package.  *Waldman*, 714 F. Supp. 2d at 403.  Here, however, plaintiffs' entire Amended Complaint is based on the allegation that plaintiffs were led to believe that there were buying ***more Advil pills*** than were included in the package (*see* Am. Compl. ¶¶ 18-21), an allegation that is directly belied by the accurate pill count on the product label.

For all of these reasons, plaintiffs have not plausibly alleged deception as a matter of law, and all of their claims should be dismissed for this reason alone.

## B.   Plaintiffs Fail To Sufficiently Allege Causation Or Reliance.

Plaintiffs' claims fail for the additional reason that plaintiffs do not adequately allege causation and/or reliance – fundamental elements of each of the claims at issue.

Plaintiffs allege that they do not need to plead "reliance" to state a claim under the consumer-fraud statutes of New York and Florida.  (*See* Am. Compl. ¶¶ 85, 123 (internal quotation marks and citation omitted).)  Both state's laws, however, do require causation.  As courts have recognized, "the causation element [of plaintiffs' consumer-fraud claims under New York and Florida law] is essential: The plaintiff[s] must show that the defendant's material deceptive act caused the injury."  *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 557-58 (S.D.N.Y. 2014) (internal quotation marks and citation omitted) (dismissing claim under GBL § 349 because plaintiff "fails to explain how any allegedly

deceptive acts or practices *caused* plaintiff injury") (emphasis added); *see also Prohias v. AstraZeneca Pharm., L.P.*, 958 So. 2d 1054, 1056 (Fla. Dist. Ct. App. 2007) (affirming dismissal of claim under FDUTPA and for unjust enrichment because plaintiff failed to adequately allege that defendants' alleged misconduct caused her to purchase Nexium).[5]  Plaintiffs' common-law claims for unjust enrichment also require proof of a causal link between the defendant's alleged misconduct and their alleged injuries.  *See, e.g.*, *Krouch v. Wal-Mart Stores, Inc.*, No. 12-cv-02217-YGR, 2014 U.S. Dist. LEXIS 152755, at *24 (N.D. Cal. Oct. 28, 2014) ("For the elements of unjust enrichment to be satisfied [under California law], there must also be a sufficient causal nexus between an alleged injury and the conduct of the accused party such that the accused party was *unjustly* enriched.");[6] *Network Enters., Inc. v. Reality Racing, Inc.*, No. 09 Civ. 4664 (RJS), 2010 U.S. Dist. LEXIS 89598, at *18-19 (S.D.N.Y. Aug. 24, 2010) ("To plead a plausible claim to relief on a theory of unjust enrichment [under New York law], plaintiffs must show a causal nexus between a defendant's enrichment and their own expense that goes beyond mere correlation.") (internal quotation marks and citation omitted); *City of Miami v. Bank of Am. Corp.*, No. 13-24506-CIV-DIMITROULEAS, 2014 U.S. Dist. LEXIS 95445, at *21 (S.D. Fla. July 8, 2014) ("Plaintiff's unjust enrichment claim [under Florida law] fails due to the same insufficient causal allegations that were fatal to Plaintiff's FHA claim.").

Plaintiffs' remaining claims do require allegations of reliance.  "[T]o state a claim under the UCL, FAL, and CLRA, [a plaintiff] must allege facts sufficient to show that she relied on the defendant's alleged misrepresentation."  *Avoy v. Turtle Mountain, LLC*, No. 13-CV-0236-LHK, 2014 WL 587173, at *5 (N.D. Cal. Feb. 14, 2014) (dismissing UCL, FAL and CLRA claims because plaintiff failed to

---

[5]  The causation requirement extends to requests for injunctive relief under GBL § 349 as well.  *See Private One of NY, LLC v. Golden Touch Transp., Inc.*, 31 Misc. 3d 1221(A), 930 N.Y.S.2d 176, 2011 WL 1674845, at *12 (Sup. Ct. 2011) (unpublished table decision) (dismissing plaintiff's claim for injunctive relief under GBL § 349 where plaintiff could not show that it had been injured "*by reason of* any violation of" the statute, as the injury at issue would exist even if defendant were to cease providing the allegedly deceptive services) (emphasis added) (internal quotation marks and citation omitted).

[6]  As discussed in Section II.B below, the better reasoned California decisions do not recognize a claim for unjust enrichment at all, but as explained here and in Section I.C, to the extent such a claim is cognizable it would require allegations of causal nexus and injury.

plausibly allege reliance on any alleged misrepresentation).[7]  Similarly, as plaintiffs themselves

acknowledge in the Amended Complaint, their claims for negligent misrepresentation also include a

reliance element under each of the relevant states' laws.  (*See* Am. Compl. ¶ 132.)  *See also McKinniss*,

2007 WL 4766525, at \*5 (negligent-misrepresentation claim under California law requires proof that "the

plaintiff reasonably relied on th[e] false information to his detriment"); *Tuosto v. Philip Morris USA Inc.*,

No. 05 Civ. 9384(PKL), 2007 WL 2398507, at \*14 (S.D.N.Y. Aug. 21, 2007) ("In order for [plaintiff] to

state a claim for negligent misrepresentation [under New York law] he must show . . . that [defendant]

made a false representation . . . and . . . that [plaintiff] reasonably relied on it to [his] detriment.") (internal

quotation marks and citation omitted); *Alvarez v. Royal Caribbean Cruises, Ltd.*, 905 F. Supp. 2d 1334,

1341-42 (S.D. Fla. 2012) (dismissing negligent-misrepresentation claim under Florida law because

plaintiffs did not allege reliance).

     Moreover, many of the laws at issue require that any reliance by the plaintiff be reasonable, such

that actual reliance by a plaintiff does not suffice to establish reliance or causation if the reliance was

unreasonable in the face of the disclosures made by the defendant.  *See, e.g.*, *Nivia v. Nationstar Mortg.*,

*LLC*, No. 13-Civ-24080, 2014 WL 4146889, at \*5-6 (S.D. Fla. Aug. 21, 2014) (dismissing plaintiffs'

FDUTPA claim where plaintiffs failed to sufficiently plead that an objectively reasonable person would

have interpreted defendants' stated "goal . . . to keep homeowners who are under financial stress in their

---

[7]     Under the UCL, claims brought under the law's "fraudulent" prong require a showing of reliance "because reliance is the causal mechanism of fraud." *See Rooney v. Sierra Pac. Windows*, No. 10-CV-00905-LHK, 2011 U.S. Dist. LEXIS 117294, at \*28 (N.D. Cal. Oct. 11, 2011) (internal quotation marks and citation omitted), *aff'd*, 566 F. App'x 573 (9th Cir. 2014).  While some courts have stated in dicta that a showing of reliance may not be required for UCL claims brought under the "unfair" and "unlawful" prongs, it is clear that, at a minimum, some "causal connection" is required under all three prongs in order to have standing to bring a UCL claim.  *Id.* at \*27-29 (declining to "wade into this thicket of California law" to resolve whether reliance is required for actions involving unlawful or unfair acts, but holding that, "[n]evertheless, [p]laintiff is still required to show a causal connection between the injury and the conduct complained of") (internal quotation marks and citation omitted).  And in any event, other courts have concluded that reliance must be shown under the other prongs as well, *e.g.*, *Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1088 (N.D. Cal. 2014) ("A UCL plaintiff must plead reliance even for a claim under the UCL's unlawfulness prong."), a holding that makes particular sense in this case since all of plaintiffs' claims are based on the fundamental allegation that Advil's packaging was somehow misleading.

homes helping them with loan modifications" as guaranteeing a right to loan modification, despite the fact that plaintiffs may have subjectively relied on that interpretation of the allegedly misleading statement), *aff'd*, No. 14-14048, 2015 WL 4930287 (11th Cir. Aug. 19, 2015); *Makaeff v. Trump Univ., LLC*, No. 3:10-cv-0940-GPC-WVG, 2014 WL 688164, at *14 (S.D. Cal. Feb. 21, 2014) ("New York courts have adopted an objective definition of deceptive acts and practices . . . limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances.") (internal quotation marks and citation omitted); *Linville v. Ginn Real Estate Co.*, 697 F. Supp. 2d 1302, 1307-08 (M.D. Fla. 2010) ("Plaintiff's purported reliance on Defendant SunTrust's alleged oral misrepresentations, which contradict the express terms of the loan documents, is unreasonable as a matter of law."); *McKinniss*, 2007 WL 4766525, at *3 ("In order to state a claim under the UCL, FAL, or CLRA, [p]laintiffs must allege that statements or other representations appearing on [d]efendant's product labels are likely to deceive a reasonable consumer.").

To establish causation, a plaintiff must "demonstrate the purchase of products as a result of" the defendant's alleged conduct. *Bishop v. 7-Eleven, Inc.*, 37 F. Supp. 3d 1058, 1065 (N.D. Cal. 2014) (internal quotation marks and citation omitted), *appeal filed*, No. 14-15986 (9th Cir. May 20, 2014). "To plead actual reliance, the 'plaintiff must allege that the defendant's misrepresentations were an ***immediate*** cause of the injury-causing conduct.'" *Id.* (quoting *In re Tobacco II Cases*, 207 P.3d 20, 40 (Cal. 2009)) (emphasis added). Applying these elements, courts have recognized that a plaintiff cannot plausibly allege reliance where, as here, "[t]he labels" or packaging "introduced in the . . . complaint negate" plaintiffs' "contention" that they were misled – i.e., they list the contents of the product. *Avoy*, 2014 WL 587173, at *5, *7 (dismissing UCL, CLRA and FAL claims given fundamental "deficiencies in [p]laintiff's reliance allegations"). In such a case, "it is not plausible that [p]laintiffs believed" that the packaging or product label represented otherwise, *Kane v. Chobani, Inc.*, No. 12-CV-02425-LHK, 2013 U.S. Dist. LEXIS 134385, at *36 (N.D. Cal. Sept. 19, 2013), thereby "undermin[ing]" any claim of reliance, *McKinnis*, 2007 WL 4766525, at *5 ("Reasonable reliance is further undermined by the fact that a quick glance at the back of [d]efendant's product labels reveals the precise ingredients and percentage of fruit in the products.").

14

For example, in *Avoy*, the plaintiff commenced a putative class action against the producer of dairy-free food items, alleging that its package labeling on various food products was unlawful and deceptive and asserting claims under the UCL, FAL and CLRA. 2014 WL 587173, at *1-2. The gravamen of the plaintiff's complaint was that use of the phrase "Organic Evaporated Cane Juice" on the products' labeling misled her into believing that the products did not contain sugar. *Id.* at *2, *5. As the court explained, however, "[t]he labels to the Purchased Products fatally undermine[d] [plaintiff's] claims." *Id.* at *5. After all, each of the labels cited in the complaint listed "Sugar" or "Sugars" as an included nutrient and contained such terms as "sugar," "syrup" or "dextrose" in their ingredient lists. *Id.* (internal quotation marks and citation omitted). Thus, "[t]he labels introduced in the amended complaint negate[d] [plaintiff's] contention that, even though she was purchasing frozen desserts and yogurts with sugar, the listing of 'Organic Evaporated Cane Juice' misled her into believing – or would mislead a reasonable person into believing – the products did not contain sugar." *Id.* Because plaintiff failed to "reconcile[] her allegation that [defendant] misled her into buying products with no added sugar despite the presence of these ingredients on the label," plaintiff failed to adequately allege reliance, which resulted in dismissal of plaintiff's consumer-protection claims under California law. *Id.* at *6.

Courts have likewise concluded that causation is lacking in similar circumstances, explaining in one case involving alleged misrepresentations about ATM fees, for example, that a standard click-through screen alerting ATM users to the fee before allowing them to complete their transactions broke "the causal connection between the defective notice and the payment of the fee." *Brown v. Bank of Am., N.A.*, 457 F. Supp. 2d 82, 84-89 (D. Mass. 2006) (reaching the same conclusion under the reliance standard of the UCL and the causation standard of Massachusetts's consumer-fraud statute).

The same logic applies here. Plaintiffs allege that they "relied on the sizes of the dispensing bottles to believe that the entire volume of the packaging would be filled to capacity with ibuprofen pills." (Am. Compl. ¶ 40.) They also allege that they "did not rely on the labeling specifying the number of ibuprofen pills in the [p]roducts, but rather relied on the sizes of the packaging and the dispensing bottles" alone. (*Id.* ¶ 37; *see also id.* ¶ 50 (plaintiffs believed "they were getting more" Advil they did "[b]ased on

Defendant's Product packaging size, and not the specific number of pills as described in the labeling").)

But "[t]he labels to the Purchased Products" identified in the Complaint "fatally undermine [plaintiffs']

claims." *Avoy*, 2014 WL 587173, at *5. As plaintiffs' Amended Complaint makes clear, the packaging

on the products at issue ***prominently displays the pill count for each product***, "negat[ing] [plaintiffs']

contention" of reliance. *Id.* Plaintiffs' own subjective decision to ignore this information does not change

the analysis because reliance on a subjective estimate of quantity in lieu of the express disclosure of

quantity is not reasonable. *Linville*, 697 F. Supp. 2d at 1307-08. Similarly, even if plaintiffs could

somehow establish that the packaging was somehow misleading, "they cannot establish loss causation

because the" prominent disclosure of the number pills in each container "breaks the causal connection

between the defective [packaging] and the payment of" money for the product. *Brown*, 457 F. Supp. 2d at

89. Plaintiffs' claims must be dismissed for this reason as well.

## C.   Plaintiffs Fail To Sufficiently Allege Injury.

Plaintiffs' claims all fail for a third reason as well: they have not pled a cognizable injury

because they received precisely the number of pills promised on the packaging of the Advil products they

purchased.

Injury is a fundamental element of plaintiffs' claims for consumer fraud. *See, e.g.*, *Krouch*, 2014

U.S. Dist. LEXIS 152755, *12-14, *21-24 ("[P]laintiff's causes of action [under the CLRA, FAL and

UCL] require her to demonstrate [that] she suffered harm[.]"); *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d

1329, 1335-36 (S.D. Fla. 2007) ("[T]o state a claim under the [FDUTPA], [the plaintiff] must allege, at a

minimum, that she has been aggrieved," and similarly, in a GBL § 349 damages claim, "a plaintiff must

allege actual damage."); *Porwick v. Fortis Benefits Ins. Co.*, No. 99 CV 10122(GBD), 2004 WL 2793186,

at *4 (S.D.N.Y. Dec. 6, 2004) (dismissing claim for injunctive relief under GBL § 349(h) where "plaintiff

received what he bargained for, and hence suffered no actionable injury" and noting that "[a]lthough the

New York State Attorney General may seek injunctive relief without a showing of injury, a private

plaintiff may not").[8]  Plaintiffs must also establish injury to prevail on their claims for negligent

misrepresentation.  *See, e.g.*, *Monday v. Saxon Mortg. Servs., Inc.*, No. CIV. 2:10-989 WBS KJM, 2010

WL 10065312, at *5 (E.D. Cal. Nov. 29, 2010) ("The elements of [a] negligent misrepresentation [claim]

under California law" include "justifiable reliance on the misrepresentation, and . . . resulting damage.")

(internal quotation marks and citation omitted); *Prohias*, 485 F. Supp. 2d at 1334 ("To state a claim for

negligent misrepresentation under either Florida or New York law, a plaintiff must plead some injury

which resulted to the plaintiff by acting in justifiable reliance upon the defendant's misrepresentation.").

The same is true with respect to plaintiffs' claims for unjust enrichment.  *See, e.g.*, *Krouch*, 2014 U.S.

Dist. LEXIS 152755, at *14, *21-24 (plaintiff's "cause of action for unjust enrichment [under California

law] also requires a finding that the claimant suffered a loss."); *Prohias*, 485 F. Supp. 2d at 1334-35

(unjust enrichment under New York and Florida law require evidence that "the plaintiff was harmed in

some way") (internal quotation marks and citation omitted).

      Applying this requirement, courts have made clear that a plaintiff seeking to recover for supposed

injuries resulting from the purchase of a product or service cannot proceed where – as here – the

"[p]laintiff received exactly what he paid for."  *Baggett*, 2009 U.S. Dist. LEXIS 95241, at *9-10 (granting

defendant summary judgment on the plaintiff's UCL claim for lack of injury where plaintiff was not

deprived of the benefit of his bargain); *see also, e.g.*, *Bishop*, 37 F. Supp. 3d at 1067 (plaintiff failed to

---

[8]      Plaintiffs claim in the Amended Complaint that to state a claim for injunctive relief under GBL §
349, plaintiffs need not plead any "pecuniary injury" or allege "they are not likely to repurchase the
product."  (Am. Compl. ¶¶ 80, 85 (internal quotation marks and citation omitted).)  But the text of the
statute itself expressly states that only a person "who **has been injured** by reason of any violation of this
section may bring an action in his own name to enjoin such unlawful act or practice."  N.Y. GBL § 349(h)
(emphasis added).  Further, courts have required plaintiffs alleging claims for injunctive relief under the
statute to establish a likelihood of continuing or future harm.  *See Elkind v. Revlon Consumer Prods.
Corp.*, No. 14-CV-2484(JS)(AKT), 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015) (holding that
injunctive relief under the GBL was inappropriate where plaintiffs were "now aware of the alleged
misrepresentations that they challenge, so there is no danger that they will be deceived by them" in the
future and declining to follow other cases suggesting that the requirement of a future or continuing injury
is not applicable in cases where injunctive relief is sought in the consumer context).  Here, plaintiffs have
failed to plausibly allege that they will purchase Advil in the future, much less that they will sustain any
future harm from the purchase of Advil given that they are indisputably aware of the alleged existence of
the slack-fill.  For this reason too, their claim for injunctive relief fails.

plausibly allege injury under the UCL, FAL, and CLRA where claims about trans fat and cholesterol were truthful); *N.G.L. Travel Assocs. v. Celebrity Cruises, Inc.*, 764 So. 2d 672, 675 (Fla. Dist. Ct. App. 2000) (affirming dismissal of unjust-enrichment claim under Florida law because plaintiff "received exactly what it bargained for"; "Unjust enrichment cannot exist where payment has been made for the benefit conferred.") (internal quotation marks and citation omitted).  To this end, any supposed economic "'loss' . . . beyond that which [the plaintiff] was promised cannot" supply the requisite injury required for his or her claims.  *Baggett*, 2009 U.S. Dist. LEXIS 95241, at *10.

In *Baggett*, for example, the plaintiff challenged the defendant's practice of including a "hardstop" on its printers that shut down all printing operations when a toner cartridge reaches "empty," even though some toner remained in the cartridge.  *Id.* at *2.  The court granted the defendant summary judgment on plaintiff's claim under the UCL because he failed to establish that he actually "lost money or property" as a result of defendant's allegedly unfair business practice.  *Id.* at *9.  As the court explained, the plaintiff bought a toner cartridge that promised a yield of up to 2,000 color pages.  *Id.*  "Notably, [p]laintiff [did] not argue that the toner cartridge failed to produce 2,000 color pages, but argue[d] instead that he was forced to replace his cartridge prematurely and could possibly have printed more pages with his original cartridge."  *Id.*  Because the "[p]laintiff received exactly what he paid for . . . his 'loss' of toner beyond that which he was promised c[ould not] confer standing under the UCL."  *Id.* at *9-10.[9]

The same logic dictates dismissal of all of plaintiffs' claims here.  Plaintiffs' claims are premised on the core factual allegation that "[a]s a result of [d]efendant's deception" plaintiffs "paid a premium" for Advil products "over other ibuprofen products sold on the market."  (Am. Compl. ¶ 44.)  However, Pfizer provided plaintiffs "with exactly what [they] bargained for": fully functional ibuprofen pills, the number of which matched the amount prominently displayed on the product' packaging.  *Baggett*, 2009 U.S. Dist. LEXIS 95241, at *10.  "Notably, [p]laintiff[s] do[] not argue that" the pill containers included

---

[9]     This same reasoning applies to each prong of the UCL.  Thus, where plaintiffs have received "exactly what [they] paid for," they lack standing under either the unfair, unlawful, or fraudulent prongs of the UCL.  *Baggett*, 2009 U.S. Dist. LEXIS 95241, at *9-10.

fewer pills than were advertised.  *Id.* at *9.  Nor do they allege that the products were in any way

defective or that they failed to derive any benefit from them.  Because plaintiffs do not – and cannot –

plausibly allege that they suffered economic loss as a result of Pfizer's alleged conduct, their claims

should be dismissed for this reason as well.

## II.    PLAINTIFFS' CLAIMS FOR NEGLIGENT MISREPRESENTATION AND UNJUST ENRICHMENT FAIL FOR ADDITIONAL REASONS.

### A.    Plaintiff Fermin's Negligent-Misrepresentation Claim Fails For Additional Reasons.

Plaintiff Fermin's claim for negligent misrepresentation also fails because he does not allege facts

necessary to establish a "special relationship" between the parties, as required under New York law.

"[U]nder New York law, a plaintiff may not recover for negligent misrepresentation in the

absence of a special relationship of trust or confidence between the parties."  *Barron Partners, LP v.

LAB123, Inc.*, 593 F. Supp. 2d 667, 674 (S.D.N.Y. 2009) (internal quotation marks and citation omitted).

Plaintiffs allege that they had a "special relationship" with Pfizer because the Company had a "duty to

disclose the true nature of the Products and not sell the products in misleading containers."  (Am. Compl.

¶ 134.)  New York law, however, is clear that "[g]enerally, an arms-length commercial transaction,

without more, does not give rise to a special duty," even where there is an allegation that the seller failed

to disclose information to the buyer.  *Tuosto*, 2007 WL 2398507, at *15; *see also Dall. Aerospace, Inc. v.

CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003) ("[T]he law of negligent misrepresentation requires a

closer degree of trust between the parties than that of the ordinary buyer and seller in order to find

reliance on such statements justified.").  Accordingly, courts regularly dismiss negligent-

misrepresentation claims absent some evidence of a fiduciary relationship or other relationship of

confidence between the parties.  *See, e.g.*, *Tuosto*, 2007 WL 2398507, at *14-15 (dismissing negligent-

misrepresentation claim because tobacco company's allegedly deceptive marketing of cigarettes

purchased by the plaintiff did not give rise to a "special relationship"); *MBIA Ins. Corp. v. Royal Bank of

Can.*, 28 Misc. 3d 1225(A), 958 N.Y.S.2d 62, 2010 WL 3294302, at *41 (Sup. Ct. 2010) (unpublished

table decision) (dismissing negligent-misrepresentation claim alleged by one party to a commercial

transaction because parties "acting at arms' length in negotiating a contract are not in a special relationship" and the defendant's alleged "unique or special expertise alone is insufficient to create an issue of fact concerning the existence of a special relationship") (internal quotation marks and citation omitted).

Here, plaintiff Fermin does not allege any facts suggesting that he was in a fiduciary or other close relationship of trust with Pfizer.  In fact, plaintiff Fermin does not allege that he has any direct relationship with the Company at all given that he bought the Advil at issue from a Duane Reade, not Pfizer itself.  (*See* Am. Compl. ¶ 18.)  Accordingly, he has not adequately alleged the existence of a "special relationship" capable of giving rise to a negligent-misrepresentation claim – and that claim should be dismissed for this reason too.[10]

## B.     Plaintiffs' Claims For Unjust Enrichment Fail For Additional Reasons.

Plaintiffs' claims for unjust enrichment fail because:  (1) plaintiffs do not allege that they lack an adequate remedy at law; (2) California does not recognize unjust enrichment as an independent cause of action; and (3) Mr. Fermin's purchase created an express contract, precluding recovery under an unjust-enrichment theory under New York law.

***First***, all of the states at issue require a plaintiff who seeks recovery for unjust enrichment to allege that he or she does not have an adequate remedy at law.  *See, e.g.*, *Barocio v. Bank of Am., N.A.*, No. C 11-5636 SBA, 2012 WL 3945535, at *4 (N.D. Cal. Sept. 10, 2012) (California law) (dismissing claim for unjust enrichment – to the extent such a claim exists under California law – because the claim was synonymous with restitution available under the UCL); *Licul v. Volkswagen Grp. of Am., Inc.*, No.

---

[10]     Additionally, plaintiffs' claims for negligent misrepresentation under Florida law must be dismissed because they are "simply product liability claims re-titled as claims for negligent misrepresentation" and are therefore barred by the economic-loss doctrine.  *Burns v. Winnebago Indus., Inc.*, No. 8:13-cv-1427-T-24 MAP, 2013 WL 4437246, at *3 (M.D. Fla. Aug. 16, 2013) (agreeing with the defendant's argument that "[p]laintiff's claims seek relief due to the inferior quality of the [product], which did not meet his expectations"; however, allowing this alternative pleading "would mean that any time a purchaser received a defective product that did not cause any injuries or damage to other property, such a purchaser could assert claims for negligent [misrepresentation] . . . to avoid the economic loss rule").

13-61686-CIV, 2013 WL 6328734, at *7-8 (S.D. Fla. Dec. 5, 2013) (dismissing plaintiffs' unjust-enrichment claims under Florida law) ("Here, Plaintiffs' unjust enrichment claim is a vague catch-all that does no more than incorporate by reference the alleged wrongdoing already addressed by their other legal causes of action, and thus should be dismissed as duplicative."); *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790, 967 N.E.2d 1177, 1185, 944 N.Y.S.2d 732, 740 (2012) (affirming the trial court's dismissal of plaintiffs' claims for unjust enrichment under New York law because it was duplicative of plaintiffs' other tort claims; "unjust enrichment is not a catchall cause of action to be used when others fail"). Plaintiffs have failed to offer such an allegation here. To the contrary, their Complaint states multiple causes of action that they claim entitle them to legal remedies.[11]

       *Second*, the California plaintiffs' claims for unjust enrichment fail because California does not recognize unjust enrichment as an independent cause of action. Rather, in California, unjust enrichment is only a general principle underlying various legal theories and remedies that is synonymous with restitution. *See Myers-Armstrong v. Actavis Totowa, LLC*, 382 F. App'x 545, 548 (9th Cir. 2010); *Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 987 (N.D. Cal. 2010) (dismissing with prejudice plaintiffs' unjust-enrichment claim brought in connection with claims of misappropriation and violation of the UCL because unjust enrichment does not exist as a stand-alone cause of action); *LaCourt v. Specific Media, Inc.*, No. SACV 10-1256-GW(JCGx), 2011 WL 1661532, at *8 (C.D. Cal. Apr. 28, 2011)

---

[11]     Plaintiffs claim that they are permitted to plead their unjust-enrichment claims in the alternative to their negligent-misrepresentation and statutory claims, citing *St. John's University v. Bolton*, 757 F. Supp. 2d 144, 183-85 (E.D.N.Y. 2010). (*See* Am. Compl. ¶ 147.) *St. John's* is inapposite. There, the court allowed an unjust-enrichment claim to survive a motion to dismiss because "the threshold question [was] whether an enforceable contract exist[ed] that govern[ed] the subject matter underlying the unjust enrichment claim." 757 F. Supp. 2d at 184. Here, by contrast, plaintiffs do not allege that any contract governs the subject matter of their claims. Moreover, plaintiffs' claims for unjust enrichment are based on the same alleged conduct underlying their other causes of action. (*See* Am. Compl. ¶ 149 ("As a result of [d]efendant's deceptive, fraudulent and misleading packaging, advertising, marketing and sales . . . [d]efendant was enriched, at the expense of and members of the [c]lass, through the payment of the purchase price for [d]efendant's [p]roducts.").) As such, "it is not a true alternative theory of relief but rather is duplicative of those legal causes of action" and should be dismissed. *Licul*, 2013 WL 6328734, at *7-8.

(dismissing unjust-enrichment claim because it "cannot serve as an independent cause of action").[12]

Third, Mr. Fermin's claims for unjust enrichment fail for the additional reason that any benefit conferred on Pfizer is too attenuated to support the requested relief. Although a claim for unjust enrichment under New York law does not require privity between parties, the relationship between the parties cannot be too attenuated. See Sperry v. Crompton Corp., 8 N.Y.3d 204, 216, 863 N.E.2d 1012, 1018, 831 N.Y.S.2d 760, 766 (2007) (affirming the dismissal of unjust-enrichment claim because the relationship between indirect purchasers of tires and defendants who fixed prices for chemical additives in the tires was too attenuated); State ex rel. Spitzer v. Daicel Chem. Indus., Ltd., 42 A.D.3d 301, 304, 840 N.Y.S.2d 8, 12 (2007) (holding that the relationship between indirect purchasers of food additives and manufacturers that allegedly conspired to fix the price of the additives was too attenuated for an unjust-enrichment claim). Consistent with this principle, the court in Fenerjian v. Nongshim Co., No. 13-cv-04115-WHO, 2014 WL 5685562, at *22-23 (N.D. Cal. Nov. 4, 2014), dismissed the plaintiffs' unjust-enrichment claims because indirect purchasers of Korean manufacturers' noodles – purchased through food retailers – were too attenuated to state an unjust enrichment claim under New York law. Here, as in Fenerjian, the New York plaintiff purchased the defendant's product through a retailer. (See Am. Compl. ¶ 18.) Therefore, his claims are too attenuated to support an unjust-enrichment theory of recovery.

For all of these reasons, plaintiffs' unjust-enrichment claims should be dismissed.

## III.    ALL OF PLAINTIFFS' CLAIMS ARE PREEMPTED.

Plaintiffs' claims should also be dismissed because they are preempted by federal law. The doctrine of federal preemption is rooted in the Supremacy Clause of the U.S. Constitution, which

---

[12]     Some California decisions have recognized freestanding unjust-enrichment causes of action, but the weight of recent authority, including from California appellate courts, holds that "there is no cause of action for unjust enrichment[.]" Williamson v. Reinalt-Thomas Corp., No. 5:11-CV-03548-LHK, 2012 WL 1438812, at *5 (N.D. Cal. Apr. 25, 2012) (internal quotation marks and citation omitted) (noting "recent[] clarifi[cation]" on the point by the California Court of Appeal in Hill v. Roll International Corp., 128 Cal. Rptr. 3d 109, 118 (Ct. App. 2011), and collecting other authorities). As these more recent and better-reasoned decisions have explained, unjust enrichment is a quasi-contract theory of entitlement to relief akin to restitution. See, e.g., id.

"invalidates state laws that interfere with, or are contrary to, federal law." *Clean Air Mkts. Grp. v. Pataki*, 338 F.3d 82, 86-87 (2d Cir. 2003) (internal quotation marks and citations omitted). "[P]re-emption fundamentally is a question of congressional intent." *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 884 (2000) (internal quotation marks and citation omitted). Preemptive intent is particularly clear when it is "explicitly stated in the statute's language." *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977). That is the case here, as Congress has expressly provided for "[n]ational uniformity for nonprescription drugs," requiring that "no State . . . may establish or continue in effect any requirement that relates to the regulation" of over-the-counter drugs "that is different from or in addition to, or that is otherwise not identical with, a requirement under" the FDCA, the Poison Prevention Packaging Act of 1970, or the Fair Packaging and Labeling Act. 21 U.S.C. § 379r(a).

The FDA has adopted exhaustive regulations regarding the packaging of over-the-counter drugs – regulations that, among other things, establish very specific requirements for the content of the principal display panel, 21 C.F.R. § 201.60, the net quantity of contents, *id.* § 201.62, and the format and content of the product labeling, *id.* § 201.66. Section 201.66, in particular, requires inclusion of a broad range of facts about the drug, including: active ingredients; the drug's purpose and uses; specification whether the drug is intended for external use; various warnings about applicable hazards, including allergic reactions, flammability, and liver and/or stomach bleeding warnings; contraindications; warnings pertaining to use in children; symptoms or reactions that require consultation with a doctor; side effects that could impair ability to drive a car or operate machinery; whether the drug can be used during pregnancy or breast feeding; directions for use; inactive ingredients; and the manufacturer's contact information. *See generally id.* § 201.66(c). The same section also specifies the formatting of these contents in detail – even down to the font size. *Id.* § 201.66(d). And § 201.62 dedicates an entire regulation to the expression of the number of drugs contained in a package, setting forth different requirements depending on the size of the packaging involved. *See generally id.* § 201.62.

Despite these detailed requirements governing virtually all other aspects of packaging and labeling, the FDA has not promulgated any slack-fill requirements for over-the-counter drugs. This

23

omission is particularly striking in light of the fact that federal law *requires* the FDA to enact slack-fill

requirements where "necessary to prevent the deception of consumers or to facilitate value comparisons

as to any consumer commodity" within its purview, *see* 15 U.S.C. § 1454(a) & (c) (stating that slack-fill

and other requirements "shall" be adopted by the FDA or other appropriate agency where federally

mandated labeling requirements are insufficient), and the FDA's actual adoption of slack-fill

requirements with respect to other types of products, *see, e.g.*, 21 C.F.R. § 100.100.  Indeed, to the extent

that the FDA has addressed the question of slack-fill in the context of over-the-counter drugs, it has

expressly contemplated that manufacturers of these products might need to use modestly expanded

packaging to accommodate all the information required by 21 C.F.R. § 201.66.  *See Over-The-Counter*

*Human Drugs; Labeling Requirements*, 64 Fed. Reg. 13,254, 13,268 (Mar. 17, 1999) (stating that it

expects that such expansions could be done without "render[ing] the product misleading under a 'slack

fill' law or" the FDCA).  Given this regulatory picture, it is clear that any state-law requirement that

would impose liability based on the size of the packaging for an over-the-counter drug would be

"different from, or in addition to" federal regulations and therefore be preempted.[13]

---

[13]      For similar reasons, plaintiffs' statutory consumer-protection claims are also barred under the
safe-harbor doctrine recognized by those statutes.  *See* GBL § 349(d) ("[I]t shall be a complete defense
that the act or practice is . . . subject to and complies with the rules and regulations of, and the statutes
administered by . . . any official department, division, commission or agency of the United States as such
rules, regulations or statutes are interpreted by . . . such department, division, commission or agency or
the federal courts[.]"); Fla. Stat. § 501.212(1) (exempting from liability any "act or practice required or
specifically permitted by federal or state law"); *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*,
MDL No. 09-2067-NMG, No. 13-11343 NMG, 2014 U.S. Dist. LEXIS 28108, at *14 (D. Mass. Mar. 5,
2014) ("Courts have . . . applied the safe harbor doctrine to bar claims brought under the CLRA, FAL and
UCL based upon federal statutes and regulations."), *aff'd on other grounds*, 779 F.3d 34 (1st Cir.
2015).  Under the safe-harbor doctrine, a defendant may not be held liable under the statute if "another
law actually bar[s] the action or clearly permit[s] the conduct" that gave rise to the claim."  *Kelly v. BP W.*
*Coast Prods. LLC*, No. 2:14-cv-01507-KJM-CKD, 2014 U.S. Dist. LEXIS 178479, at *5 (E.D. Cal. Dec.
29, 2014) (internal quotation marks and citation omitted).  Thus, where the defendant's product complies
with FDA regulations, courts have held that the manufacturer "is entitled to safe harbor" from the
consumer-fraud claims.  *See, e.g.*, *Ebner*, 2013 WL 9760035, at *3-6 (dismissing UCL, CLRA, and FAL
claims on this basis); *Prohias*, 958 So. 2d at 1056 (affirming dismissal of FDUTPA claim targeted at
alleged advertising activity under the safe-harbor provision where the advertisements were based on the
FDA-approved labeling).  Here, for the reasons set forth in support of preemption, there is no plausible
allegation that the packaging and labeling of the products at issue did not comply with FDA
regulations.  And any argument that Pfizer could have nevertheless packaged its product to make it less

*(cont'd)*

Plaintiffs allege that the "state law causes of action for labeling violations are not preempted by federal law if they seek to impose requirements that are identical to those imposed by the FDCA" (Am. Compl. ¶ 28 (internal quotation marks and citation omitted)) and that state slack-fill laws "mirror federal law" on the subject (*id.* ¶ 26).  But as just noted, federal law, which imposes comprehensive regulations that govern virtually every detail of the packaging of those products and expressly authorizes the FDA to impose slack-fill requirements if it deems it proper to do so, does not impose a slack-fill requirement on over-the-counter drugs.  Thus, plaintiffs' state-law claims are preempted unless they extend no further than federal law.  And if they extend no further than federal law, they fail on the merits because federal law does not contemplate liability for over-the-counter drugs that allegedly contain non-functional slack fill.

## **CONCLUSION**

For the foregoing reasons, plaintiffs' Complaint should be dismissed with prejudice.

Dated:  August 31, 2015                                   Respectfully submitted,

*Of Counsel:*                                                    By: /s/ Thomas E. Fox_____

                                                                      Thomas E. Fox
John H. Beisner                                              SKADDEN, ARPS, SLATE, MEAGHER
Jessica D. Miller                                            & FLOM LLP
Geoffrey M. Wyatt                                        4 Times Square
SKADDEN, ARPS, SLATE, MEAGHER          New York, New York 10036
& FLOM LLP                                                  Tel: (212) 735-3000
1440 New York Avenue, N.W.                       Email:  thomas.fox@skadden.com
Washington, D.C. 20005
Tel: (202) 371-7000
Fax: (202) 393-5760
E-mail:  John.Beisner@skadden.com,
        Jessica.Miller@skadden.com

_____
*(cont'd from previous page)*
deceptive does not foreclose application of the safe-harbor doctrine because the FDA "has not found it necessary" to impose any slack-fill requirements.  *See Ebner*, 2013 WL 9760035, at *3-6 (rejecting argument that safe-harbor rule should not apply because FDA regulations did not prohibit defendant from additionally disclosing the net amount of lip product "reasonably accessible" to a consumer where the FDA "ha[d] not found it necessary to designate alternative or additional requirements for products such as Defendant's").

Geoffrey.Wyatt@skadden.com


*Attorneys for Defendant Pfizer Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on the 31st day of August, 2015, I have served a copy of the foregoing upon all

counsel of record via email and on C.K. Lee, Lee Litigation Group, PLLC, 30 East 39th Street, Second

Floor, New York, NY 10016 via email and Federal Express.


    <u>s/ Brian Baggetta</u>
Brian Baggetta
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Tel:  (202) 371-7000
Fax:  (202) 661-0539
E-mail:  Brian.Baggetta@skadden.com